## ALLEN *vs.* THE STATE OF GEORGIA.

1. Although a witness may have been present at or near to the scene
   of an arson, and may, for a time, have concealed the fact, yet, if
   he did not, in any way, aid, abet, procure or participate in it, he
   was not an accomplice within the meaning of the statute, so as to
   require corroboration of his evidence in order to authorize a con-
   viction thereon.
2. A visitation of Providence, such as a tornado, destroying houses
   and laying waste the premises of a judge of the superior court,
   furnishes such unavoidable cause of absence as will authorize the
   judge to adjourn a term of the superior court by order granted in
   vacation.
(*a.*) The judge himself may determine the unavoidable cause which
   detains him and keeps him from attending court; and unless there
   is a manifest abuse of his discretion, resulting in injury to litigants,
   this court will not interfere.
(*b.*) The statute neither expressly nor impliedly requires the judge
   to sign the order. The signature of the clerk, by his direction,
   and the approval of the minutes on which the order appears, seems
   to be sufficient.
(*c.*) This differs from the case in 39 *Ga.*, 723.

March 17, 1885.

Criminal Law. Accomplice. Practice in Superior
Court. Courts. Before Judge LAWSON. Jones Superior
Court. April Adjourned Term, 1884.

To the report contained in the decision, it is only neces-
sary to add, in explanation of the first division thereof,
the following: Allen was indicted for arson in setting
fire to the house of one Smith. One Willis Glawson,
a witness for the state, testified, in brief, as follows:
Witness lived about a mile from Smith's; lived with him
about three years previously, but had a misunderstand-
ing with him. Went to church with defendant on the
night of the fire. On the way defendant said "he had
something against a d—d son of a b—ch, he wanted to get
it out of him, if he had to burn it out on Monday morning
before day;" but he called no names. He told witness
to come to his house after leaving church; that he had

v 74-49

something for him (witness). Witness did not ask or know what was wanted. Witness spent sometime after church with a party of people, and after stopping at his mother's house awhile, reached defendant's before day. They went up the road together. When about half way to Smith's, defendant told witness to wait until he could go to Smith's and get his banjo; he went towards the lot, in doing which he had to go round the kitchen. He was gone about a quarter of an hour or longer. He returned without any banjo, but said he "had fixed the d—d son of a b—ch." Witness asked him if he had fired the house. He said, "Never mind," and went towards his home.

The court charged on this subject as follows: "To determine the truth of the evidence, it is necessary for you to know the value which the law attaches to the testimony of certain witnesses. You are not authorized to convict the defendant upon the testimony of an accomplice, unless the testimony of the accomplice is corroborated by other testimony or facts in the case pointing directly to the guilt of the defendant and connecting him with the crime (so) as to satisfy your minds that his testimony is true. Defendant's counsel say that if Willis Glawson knows anything of the crime, he, deriving his knowledge from his participation, is an accomplice. Is this true? One may be an accomplice either as a principal or as accessory (the court read sections 4305, 4307 and 4309 of the Code); one may have knowledge of a crime to be committed and be present at its commission, without being an accomplice; he may be present as a spectator or for the purpose of detecting the perpetrator or other innocent purposes. To be an accomplice, he must have co-operated in the commission of the crime; as accessory before the fact, he must procure or counsel its commission; and as accessory after the fact, he must harbor, assist or protect the principal offender; and as principal in the second degree, he must aid and abet its commission. To constitute crime, there must be something more than passive presence and knowl-

edge that a violation of law was intended.   Determine, under this rule, if Glawson was or not an accomplice with defendant; and if he was, his testimony must be corroborated by other testimony, or you cannot convict; if he was not an accomplice, you can convict upon his testimony alone, if it satisfies your minds of the guilt of the defendant to the exclusion of every reasonable hypothesis of his innocence."

After conviction, defendant moved for a new trial, which was refused, and he excepted

BILLUPS & HARDEMAN; R. V. HARDEMAN, by HARRISON & PEEPLES, for plaintiff in error.

ROBERT WHITFIELD, solicitor general, by J. H. LUMPKIN, for the state.

HALL, Justice.

Two questions are made and mainly insisted on in this case.   It is alleged that the defendant was convicted at a term of the court held contrary to law, and that the judge erred in his charge in reference to the extent to which it was essential to corroborate the evidence of an accomplice, in order to authorize a conviction.   We will consider the last ground first.

1. It does not appear that the witness was present at the commission of the crime, aiding and abetting it, or that he procured, counseled or commanded it, or after full knowledge of its commission concealed it from the magistrate, and harbored, assisted or protected the perpetrator thereof; so that he was not a principal in the first or second degree, or an accessory either before or after the fact. Code, §§4305, 4307, 4308.   In *Lowery's* case, **72** *Ga.*, 649, we held that the testimony of a witness, who was present when a homicide was committed, but who did not in any way participate therein, but who, for a time thereafter, may have concealed the fact, was sufficient,

without other evidence, to authorize a conviction; that such a witness was neither a principal in the first or second degree nor an accessory before or after the fact, and was not an accomplice within the meaning of §3755 of the Code ; and even if the witness had been an accessory after the fact, this would not have rendered him an accomplice, whose evidence required corroboration to justify a conviction, within the meaning of the term as used in that section. The only error in the charge of the judge upon this subject was in requiring corroboration of an accessory after the fact, in order to justify a conviction on his testimony, but this was too favorable to the defendant. In other respects, the charge is clear, full and faultless. The question of the connection of the witness with the crime, in all its legal aspects, and the effect of such connection, if found to exist, upon the force and character of his testimony, was fairly submitted to the jury.

2. At the regular April term, 1884, of Jones superior court, the clerk, by an order signed by himself, by the direction of the judge of the circuit, adjourned the court until the third Monday of May, then next, because it was impossible for the presiding judge to be present at the term, in consequence of " the destruction inflicted by the tornado of the 14th inst. upon his dwelling and premises." On the 3d Monday of May, the court was again adjourned by a similar order, likewise signed by the clerk and entered on the minutes, until the 1st Monday in July, then next, on account of the " severe illness of the judge's wife," which prevented his attendance at the adjourned term. A motion was made and overruled to arrest the judgment rendered on the verdict, which found the defendant guilty at this adjourned term, because it was not a legal term, the order for the adjournment not having been signed by the judge, but by the clerk, who had no authority to sign the same, as appeared from the minutes of the court; and because the cause assigned for the first adjournment did not show that the absence of the judge from the court was "un-

avoidable;" and because the order directing the first adjournment was never signed on the minutes of the court, nor approved by the judge. Substantially the same grounds were repeated in the motion for a new trial, which was likewise overruled. In certifying the grounds of these motions, the judge says that the first order for the adjournment was written by him and signed by the clerk, and entered on the minutes by his direction ; that, under the orders of adjournment, and immediately following all entries made upon the minutes during the vacation, he wrote the word " approved," and affixed thereto his official signature.

If a visitation of Providence, such as a fearful tornado, destroying houses and laying waste premises, does not furnish unavoidable cause for the judge's remaining at home, to repair in some measure the terrible damage inflicted, it would be difficult to conceive what does. But apart from this, who but the judge himself can determine what is the unavoidable cause that detains him at home and keeps him from attending the court? This must rest largely in his discretion, and unless there is a manifest abuse of it, resulting in injury to litigants, interference upon the part of this court to control it would, it seems to us, be wholly unwarranted. The sickness of himself or family is, by express terms of the law, made good cause for adjourning the court in this manner, and in close juxtaposition appear the words, " or other unavoidable cause." Code, §3243. The statute neither expressly nor by implication requires the judge to sign the order. The signature by the clerk, by his direction, and the approval of the minutes on which the order appears, seem to be sufficient. 50 *Ga.*, 481. The unavoidable cause set forth in this order is widely different from that given for the adjournment in *Hoye's* case (39 *Ga.*, 723), which was that certain members of the bar could not attend at the time fixed for holding the regular term, and that the judge desired to go to a commercial convention. If the attention which the

judge is permitted to give his sick family is cause for an adjournment, we do not clearly perceive why the duty of providing them with shelter, where they have been suddenly deprived of it by storm or fire, should not afford an equally cogent reason for his remaining with them and affording them relief. We have high authority for declaring that a man who neglects to provide for his household is worse than an infidel, and has denied the faith. At all events, if he failed in this duty, he would, as it seems to us, be false to the highest and holiest instincts of our nature, and wanting in the plainest duties of parent and husband. The law is not so unreasonable as to require such a sacrifice to the demands of social duty, and the neglect or abandonment of virtues which its policy cherishes and encourages.

There is nothing in the other grounds of the motion. The evidence fully sustains this verdict, and as no legal right has been withheld from this defendant, it only remains for us to sanction and approve what has been done and to order the

Judgment affirmed.