## 38409. WILLIS v. THE STATE.

GREGORY, Justice.

In November, 1980, the defendant, Charles E. Willis, was indicted for the murder of his son, Randall Willis. The first trial of the case resulted in a mistrial. On retrial the defendant was convicted of murder and sentenced to life imprisonment. His motion for new trial was denied and this appeal followed.

At trial the victim's common-law wife testified that, on the day of the victim's death, she, the victim, and Billy Pitts located the defendant at the house of Eunice Reynolds and received permission from the defendant to cut timber on the defendant's land. The defendant left with the victim and Pitts to cut timber; the victim's wife remained at the home of Eunice Reynolds. The victim's wife testified that when the three men returned several hours later, it was apparent to her they had been drinking. Shortly after their return the three men left Reynolds' house to look for deer tracks, taking the defendant's rifle with them. When Pitts and the victim returned to Reynolds' house around 8:00 p.m., the defendant was not with them. The victim's wife testified that the victim appeared "scared" and "upset." She and the victim immediately left to go to their trailer, located a short distance from Reynolds' home. The victim took the defendant's rifle with him. As they were parking the car they saw the headlights of an approaching vehicle. The victim's wife testified that the victim became agitated, took the defendant's rifle and fled into their garden, which was overgrown with weeds. She lay down on the front seat of the car. When it became apparent that the defendant was the occupant of the approaching car, the victim emerged from his hiding place. The victim's wife testified that after joking with her, the defendant informed the victim that he had come to get his rifle as he planned to go deer hunting early the following morning. The victim then instructed his wife to get the rifle from the garden. The victim's wife testified that while the victim and the defendant talked, she unloaded the rifle and placed it in the back seat of the defendant's car; she gave three unspent shells to Eunice Reynolds who was waiting for the defendant in the front seat of his car. She then told the

defendant to leave. The victim's wife testified that the victim said, "I love you" to the defendant. The defendant turned abruptly, asked "you want something, boy?" He then shot the victim "with a handgun." The victim ran toward the trailer; the defendant pointed the gun at the victim's wife, then left. The victim's wife found the victim dead on the porch of the trailer. The victim's wife denied seeing any other car near the trailer during these events.

Eunice Reynolds testified that she accompanied the defendant to the victim's trailer to get his rifle. Reynolds testified that, just as the defendant got out of the car, a yellow and black car drove down the victim's driveway, turned around, and drove out the driveway to the main highway. She stated that the victim's wife "threw" the rifle in the back of the defendant's car, but denied the victim's wife had unloaded the gun or given her any unspent shells from the gun. Reynolds testified that either "just before" or "just after" the victim's wife put the rifle in the defendant's car, she heard a gunshot. The defendant returned to the car and told Reynolds the victim's wife had shot at him. Reynolds further testified that she never saw the defendant in possession of a gun while visiting the victim's residence.

Reynolds stated that after she and the defendant returned to her home, she drove back to the victim's trailer "to see what happened." She explained that the defendant did not accompany her because the victim's wife had shot at him.

The defendant testified that he had gone to the victim's residence, unarmed, for the sole purpose of getting his deer rifle. He testified that a car drove down the victim's driveway while the victim's wife was putting the rifle in his car; that the car turned around and drove out to the main highway; that when he heard a gunshot come from the direction of his car, he thought the victim's wife was firing at him, and immediately left; that he was unaware his son had been injured when he left; that when he returned to Reynolds' home he unloaded the rifle and it accidentally discharged; that after Reynolds went back to the victim's trailer, he took "a couple of drinks" because he was "nervous from being shot at." He also testified that when Reynolds informed him his son had been shot, he was preparing to go to his son when the sheriff arrived to arrest him.

A deputy sheriff testified that, following arrest, the defendant told him that the victim "put some bad stuff on me" and that "it was either him or me." The defendant denied making either of these statements.

No autopsy was performed on the victim. The medical testimony at trial was that the nature of the victim's wound indicated

he had been shot with a single bullet which had passed entirely through his body. The medical examiner testified that x-rays indicated no bullet or bullet fragments were present in the victim's body. The medical examiner further testified that he was unable to judge from the wound the type of gun used to kill the victim, but that he estimated the bullet was larger than a .25 caliber. The bullet which killed the victim was never recovered. The defendant's rifle was the only gun introduced into evidence.

(1) The defendant first argues that the trial court erred in denying his motion for new trial on the basis of newly discovered evidence[1] and in denying his petition for a writ of error coram nobis.

Defendant offers as newly discovered evidence a letter from the Fulton County Medical Examiner, written some ten months after the second trial of defendant's case. In this letter the medical examiner expresses his opinion that "a thru-and-thru-wound of the type described would be more consistent with a rifle than any but the largest handgun." The defendant also urges a new trial should be granted on the basis of a letter written by a consulting firearms examiner expressing his opinion that from the "description of the wound" the wound appeared to have been made by a "rifle bullet rather than a bullet fired from a handgun."

Code Ann. § 70-204 provides "[a] new trial may be granted in all cases when any material evidence, not merely cumulative or impeaching in its character, but relating to new and material facts, shall be discovered by the applicant after the rendition of a verdict against him, and shall be brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial."

"Motions for new trial on the ground of newly discovered evidence are not favored. All applications for new trial upon the ground of newly discovered evidence are addressed to the sound discretion of the trial judge, and unless it affirmatively appears that he has abused his discretion in overruling the same, his discretion will not be controlled." *Kitchens v. State,* 228 Ga. 624, 626 (187 SE2d 268) (1972); Code Ann. § 70-208.

We find the defendant has failed to show that this "newly discovered evidence" is not owing to the want of due diligence that he did not acquire it sooner and that it is so material that it would probably produce a different verdict. See, *Drake v. State,* 248 Ga. 891

---

[1] While the defendant filed both a motion for new trial and an extraordinary motion for new trial based on newly discovered evidence, the record indicates that both motions were filed within the time allowed by the trial court for the motion for new trial. See Code Ann. §§ 70-204; 70-301.

(287 SE2d 180) (1982); *Burge v. State,* 133 Ga. 431, 432 (66 SE 243) (1909).

While defendant argues that the newly discovered evidence has come to his attention since trial, he concedes that it was "readily discoverable" at the time of trial and that by exercising "ordinary diligence" this evidence could have been discovered. We agree. Moreover, we are unable to say that this evidence is so material that it would probably produce a different verdict. The letters from the doctor and the firearms' expert indicate only that from the *defendant's description* to them of the victim's wound, they are of the opinion that a rifle rather than a handgun caused the victim's death. We cannot say, after examining the record as a whole, that this evidence would probably produce a different verdict. Therefore, we find that the trial court did not abuse its discretion in denying defendant's motion for new trial.

As this court has held that the writ of error coram nobis was the predecessor to an extraordinary motion for new trial based on newly discovered evidence, and that the prerequisites for granting the writ or the motion "appear to be identical," *Waye v. State,* 239 Ga. 871, 873 (238 SE2d 923) (1977), we conclude that the trial court did not err in denying defendant's petition for the writ.

(2) Following the first trial but prior to the second trial the defendant submitted to a polygraph test. The affidavit of the examiner who administered the tests states that the defendant's "polygraph charts indicated that he was truthful in relating the events [of the night of the victim's death] as he recalled them. There was no indication that [the defendant] actually shot his son." Defense counsel apparently attempted to get the State to stipulate to the results of the polygraph test so that the results would be admissible at trial under the authority of *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977). There this court held "upon an express stipulation of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have." *Chambers* at 76-77.

The State declined to stipulate for reasons which do not appear in the record; the defendant's allegation that the refusal "was obviously to gain a tactical advantage" is not supported by the record.[2]

---

[2] The State maintains that it had "a number of" reasons for refusing to stipulate to the results of the polygraph test and that these reasons were given to defendant's trial counsel. The State points out that defendant's present counsel has never asked what these reasons were.

No offer of proof of the results of the test was made at trial, although the defendant testified on cross-examination that he "took a lie detector test" and "passed" it.

The defendant now argues that the State's refusal to stipulate to the admission of the polygraph results violates his right to due process under the authority of McMorris v. Israel, 643 F2d 458 (7th Cir. 1981). We have carefully studied the McMorris case, but are unpersuaded by its reasoning. We adhere to the rule set out in *Chambers,* supra. Absent an express stipulation by the State and the accused that the results of a polygraph test will be admitted in evidence, the results are inadmissible.

(3) Defendant argues that the trial court erred in permitting a deputy sheriff to testify to the results of a trace metal test performed on the defendant to detect gun powder burns on his hands as the State failed to lay a proper foundation for the admissibility of the testimony. The defendant takes the position that absent a showing of the witness' expertise in administering the test and the reliability of the test itself, the trial court should have excluded the witness' testimony as to the results of the test.

The witness testified that he had performed trace metal tests "15 or 20" times and that he had been qualified two or three times previously in a court of law to testify to the results of trace metal tests. He then explained to the jury the procedures used in administering the test.

We find this testimony sufficient to qualify the witness as an expert, particularly in view of the fact that no objection to his qualifications was raised at trial. We also note that the defendant testified he had twice fired his rifle on the day of the victim's death. We find this enumeration of error to be without merit.

(4) Defendant next argues that the trial court erred in admitting the results of an intoximeter test administered to the defendant on the night of the victim's death. In his brief the defendant insists that he did not voluntarily consent to take the test, and complied only because he was warned under Code Ann. § 68B-306[3] that if he refused to take it, his driver's license would be suspended. The defendant maintains that since the offense with which he was charged did not arise "out of acts alleged to have been committed while [he] was driving or in actual physical control of a

---

[3] This code section provides, in part, "any person who operates a motor vehicle upon the highways of this State shall be deemed to have given consent . . . to a chemical test . . . for the purpose of determining the alcoholic or drug content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving. . ."

motor vehicle," Code Ann. § 68B-306 (a), his consent to take the intoximeter test under this section is invalid. The administering officer testified that the defendant freely consented to take the test and that he read the rights under Code Ann. § 68B-306 to the defendant as a routine matter. The defendant testified on direct examination that he "agreed" to take the intoximeter test.

The record clearly shows that the defendant neither objected to the admissibility of the intoximeter results nor contested the issue of the voluntariness of his consent to take the test at trial. He may, therefore, not raise these issues on appeal. *Timberlake v. State,* 246 Ga. 488 (271 SE2d 792) (1980); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980).

(5) The victim's wife testified that the victim told her "his daddy was going to kill him." The defendant objected and asked that the statement be stricken from the record and the witness admonished. The trial court ordered the statement stricken, cautioned the witness to not "go into that" and instructed the jury to disregard the statement. Defendant now argues that the trial court erred in not granting a mistrial "sua sponte." We do not agree. The trial court's response to the defendant's objection was appropriate. We find no error.

(6) Last the defendant argues that his trial counsel rendered ineffective assistance in not objecting to the matters referred to in enumerations three, four and five, supra; in failing to request an autopsy and exhumation of the victim's body; and in failing to make an offer of proof of the results of the polygraph test.

We note at the outset that the test regarding effective assistance of counsel in this State is " 'not errorless counsel, and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance.' " *Hawes v. State,* 240 Ga. 327, 329 (240 SE2d 833) (1977); *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515) (1974). " 'When inadequate representation is alleged [one] critical factual inquiry [may] relate to . . . whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy.' " *Hawes,* supra, at 329. The decision of "what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." *Reid v. State,* 235 Ga. 378, 379 (219 SE2d 740) (1975); ABA Standards relating to the Administration of Criminal Justice (1974), the Defense Function, § 5.2 (b); *Hawes,* supra, at 330.

Applying these principles to the record in this case, we cannot say that the defendant was denied his constitutional right to effective assistance of counsel. Specifically, we note defendant's trial counsel

argued extensively to the jury that the State had failed to prove its case beyond a reasonable doubt; that the State had not only failed to produce the murder weapon or the bullet that killed the victim, but that the State had failed to demonstrate what *type* of gun was used to kill the victim. The defendant maintained the State had demonstrated nothing more than "bizarre factual events that don't tie in together." Thus, part of the defense strategy was to highlight the inconclusiveness of the evidence in the State's case; the defendant could well have determined that this strategy might be undermined by the results of an autopsy.

We conclude that the matters on which the defendant rests his argument that his trial counsel's assistance was ineffective are strategical and tactical decisions which we do not purport to second guess.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 7, 1982.

*Word, Cook & Word, Gerald P. Word,* for appellant.

*Arthur E. Mallory III, District Attorney, Harger Hoyt, Assistant District Attorney, Michael J. Bowers, Attorney General, W. Davis Hewitt, Assistant Attorney General,* for appellee.