38903. PEEK v. THE STATE.

GREGORY, Justice.

The defendant was convicted of the murder of his sixty-five-year-old mother, Lucille Peek Bennett, and sentenced to life imprisonment. Medical testimony indicated that the victim died from a wound to the neck area inflicted by a shotgun. A ballistics expert testified that the shot which killed the victim was fired from the defendant's 410 gauge bolt-action shotgun.

A radio dispatcher employed by the City of Union Point testified that on the morning of March 30, 1980 the defendant appeared at City Hall and stated he had discovered his mother's dead body in their home. Subsequently the defendant was taken into custody and police officers administered Miranda warnings. Initially the defendant denied knowing the cause of his mother's death, but in the early afternoon of March 31 admitted to GBI agents that he had killed her because he was tired of her asking him "to go to bed with her." A GBI agent testified the defendant made the statement that his mother had requested he go to bed with her on the night of her death; when he refused she stated, "if it's the last thing I do, I'll kill you if you don't kill me." The defendant then informed the law enforcement officers that his mother was unarmed when he shot her. The GBI also testified the defendant alleged in his statement that his mother had previously attempted to poison him and that she had admitted to him she had poisoned another son.

The defense offered the testimony of a psychiatrist and a psychologist employed by Central State Hospital that the defendant possessed an IQ of approximately 64 and suffered from bouts of alcoholism as well as "schizophrenia, paranoid type." The psychiatrist, Dr. Della Torre, offered his opinion that the defendant's beliefs that his mother was attempting to seduce him or to physically harm him were "merely delusions." Dr. Della Torre also opined that at the time the defendant committed the crime he was "unable to distinguish between right and wrong due to his delusional thoughts." The defendant took the witness stand in his own behalf and testified that his mother was plotting with her friends to kill him. He testified he shot her because he was weary of her constant attempts to seduce him.

1. Defendant first argues the general grounds and the trial court's failure to grant his motion for new trial on this basis. He maintains the evidence presented at trial with regard to his sanity conclusively demonstrated that, at the time he committed the crime, he was unable to distinguish between right and wrong. Therefore, he argues, the only permissible verdict the jury could have reached would have been not guilty by reason of insanity.

In *Brooks v. State,* 247 Ga. 744, 745 (279 SE2d 649) (1981), we reaffirmed the rule that " '[j]urors are not bound by the opinions of either lay witnesses or expert witnesses as to the question of sanity and they may rely on the basic presumption [of sanity] existing under our law. [Code Ann. § 26-606.] The jury is free to reject expert testimony as to sanity and may find an accused sane even without positive testimony as to sanity.' " See *Moses v. State,* 245 Ga. 180, 181 (263 SE2d 916) (1980). In *Brooks* we expressly repudiated the suggestion now made by defendant that where an accused introduces evidence sufficient to overcome the presumption of sanity and the State offers no evidence of sanity, a verdict of guilty may not be returned. 247 Ga. at 745.

While there was evidence from which the jury could have found the defendant insane at the time of the commission of the crime, there was before the jury some evidence of the defendant's sanity inasmuch as he testified in his own behalf; furthermore, the jury was free to rely on the presumption of sanity under Code Ann. § 26-606. Examining the record as a whole in the light most favorable to the State, we conclude a rational trier of fact could have found the defendant guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant next argues that the trial court erred in denying his motion to declare his indictment void because the grand jury which indicted him was not convened in accordance with the law.

Georgia Laws 1924, pp. 67-68 provides that during each year there shall be four terms of court held in Greene County, each term commencing on the fourth Monday in the months of January, April, July and October. Under this Act grand juries are to be drawn for the terms of court "convening in January and July of each year only."[1] Code Ann. § 24-3007 provides in pertinent part, "[w]hen the clerk of the superior court is informed by the presiding judge that it is not possible for him to attend the regular term of said court, from

---

[1] The Act goes further to provide, however, that the presiding judge may, in his discretion, require the attendance of a grand jury at the April and October terms of court.

sickness of himself or his family, or other unavoidable cause . . . the clerk shall adjourn such court to such time as the judge may direct . . ."

The July, 1980 term of court in Greene County was to convene on Monday, July 28. At this time one of the three superior court judges in the Ocmulgee Circuit, Judge Jackson, was critically ill. Far prior to the commencement of the July term the two remaining judges had made plans to attend a superior court judges seminar scheduled for July 27-29, 1980. The presiding judge, in compliance with Code Ann. § 24-3007, issued an order convening the July term on July 28 and adjourning that term until August 4, 1980. On August 6, 1980 a Greene County grand jury returned a true bill of indictment against the defendant; his trial commenced on August 12, 1980. The defendant maintains that attending a judicial seminar is not an "unavoidable cause" which will excuse the failure to convene a term of court as scheduled by Georgia Laws, 1924, pp. 67-68. This court has stated that what constitutes "unavoidable cause" within the meaning of Code Ann. § 24-3007 "must rest largely in [the trial court's] discretion, and unless there is a manifest abuse of [that discretion] resulting in injury to [the] litigants, interference upon the part of this court . . . seems to us [to] be wholly unwarranted." *Allen v. State,* 74 Ga. 769, 773 (1885). Defendant has not shown either that the trial court abused its discretion in not convening the July term at the scheduled time or that he was harmed by the trial court's failure to do so. We, therefore, find that the trial court did not err in denying his motion to void the indictment.

*Judgment affirmed. All the Justices concur.*

Decided October 19, 1982.

*James L. Cline, Jr.,* for appellant.
*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.