## 39153. HUDSON v. THE STATE.

GREGORY, Justice.

In October, 1976 the defendant was convicted of the murder of Dessie Woods and sentenced to life imprisonment.

The evidence at trial showed that the defendant and victim worked turpentine boxes together and lived within a few hundred yards of one another. On the night of his death the victim came out of his house and called in the direction of the defendant's house, "we're going to take the women and put you on the girls and take them boxes." At trial the defendant testified that he did not know what the victim meant by this statement but that the victim's words had upset him. He removed his .22 automatic rifle from his bedroom and walked to the victim's house. The defendant testified that as the victim stepped toward him saying, "I'm going to put you off this place," he shot the victim three times in the leg. The defendant then walked approximately four miles to his sister's home to request that she call the police. When law enforcement officers arrived, the defendant admitted shooting the victim and surrendered himself to their custody.

Medical testimony indicated the victim had been shot at least ten times in the legs, stomach and back with a .22 rifle from a distance of no more than three or four feet. No weapon was found on the victim's person.

The defendant defended on the basis of insanity. In support of this defense a staff psychiatrist from the State Hospital testified that the defendant was insane at the time of the commission of the murder and had been insane "for at least three years and three months prior to trial."

On July 17, 1980 the trial court entered an order granting defendant's petition for an out-of-time appeal.[1] The defendant's motion for new trial was denied on May 4, 1982.[2] This appeal followed.

(1) At his trial defendant was represented by appointed counsel who at that time was simultaneously serving as the Probate Judge and Solicitor of the State Court of Treutlen County. On appeal defendant's present retained counsel argues that appointed trial counsel's functions as a state court prosecutor and probate judge prevented him from rendering effective assistance as a defense counselor at defendant's trial. Defendant takes the position that there is an inherent conflict of interest between an attorney's

---

[1] The trial court based its decision to grant the out-of-time appeal on appointed trial counsel's affidavit stating he did not advise defendant of his right to appeal because he "saw no valid ground for appeal." *Thornton v. Ault,* 233 Ga. 172 (210 SE2d 683) (1974).

[2] The record does not explain the delay between the grant of the out-of-time appeal and the denial of the motion for new trial.

function as a state court prosecutor and his ability to vigorously represent a criminal defendant. In support of this argument defendant points to jurisdictions which prohibit a public official with prosecutorial duties from representing a criminal defendant.[3] One theory underlying this prohibition is the concern that maintaining strong ties to law enforcement agencies in a prosecutorial capacity will prevent an attorney from pursuing a forceful cross-examination of law enforcement officers in a criminal defense case.

While this court has not addressed the issue of whether a state court solicitor or a probate judge is disqualified from serving as defense counsel in a criminal trial[4] or when objection to his qualification must be raised in these circumstances, we recognize the rule that objection to counsel's qualification to represent multiple criminal defendants must be raised prior to trial. *Brown v. State,* 247 Ga. 298 (275 SE2d 52) (1981). We also acknowledge that all attorneys have "an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." Cuyler v. Sullivan, 446 U. S. 335, 346 (100 SC 1708, 64 LE2d 333) (1980); Ga. Code Title 9 Appendix, Rules and Regulations for Organization and Government of State Bar of Georgia, Canon 5. Where, as here, an accused asserts that his trial counsel should have been disqualified due to loyalties divided between his representation of a criminal client and those owed the public in his prosecutorial capacity, we hold the objection to counsel must be made without delay, at the first opportunity after the accused learns of the grounds for disqualification. In this case the objection was not made until this out-of-time appeal; further, at no stage of the litigation has defendant claimed he did not know his appointed counsel held two public offices while representing him. It is not improbable that in many instances an accused may perceive numerous benefits to be gained from being represented by counsel holding two esteemed public offices. We cannot approve the practice, suggested by defendant, which would allow an accused to remain

---

[3] See, People v. Rhodes, 115 Cal. Reptr. 235 (524 P2d 363) (1974) (issue decided on basis of public policy rather than Sixth Amendment); People v. Fife, 65 Ill. App. 3d 805 (382 NE2d 1234) (1978) (Special Assistant Attorney General for Workers' Compensation matters may not represent criminal defendant due to conflict of interest); But see, State v. Mitchell, 356 S2d 974 (SC La. 1978) (assistant city prosecutor not prohibited from defending criminal defendant).

[4] We point out that Georgia Laws 1969, pp. 2201-2204, creating the State Court of Treutlen County, does not address the question of whether a State Court Solicitor may engage in the private practice of law. It does provide, however, that "[n]o person is disqualified from serving as solicitor of [state] court because he holds another county office." Ga. Laws 1969 at 2202.

silent about his misgivings, take his chance on a favorable outcome at trial, and then complain after trial that his counsel was ineffective because of his commitments to public office at the time of trial.

Further, we decline to adopt the broad rule proposed by defendant which would require automatic disqualification of every attorney in a criminal defense action[5] where the attorney is simultaneously employed as either a state court solicitor or probate judge.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, supra, at 348. " 'A mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence.' " Brown v. State, supra, at 299; Montgomery v. State, 156 Ga. App. 448, 454 (275 SE2d 72) (1980).

Defendant has failed to show that an "actual conflict" existed between his attorney's role as defense counsel and his role as state solicitor or probate judge. By "actual conflict" we mean more than the bare possibility that a conflict might have developed. The record does not indicate either that counsel's position as a state court solicitor or his position as a probate judge actually affected his defense of his client. We find no error.

(2) Next defendant maintains the trial court erred in excluding his appointed counsel from a critical stage of trial by conducting an ex parte charge conference with the district attorney while appointed counsel was making his closing argument. However, the trial transcript does not support defendant's contention that such a conference took place.

(3) (a) Prior to trial the trial court inquired whether the parties anticipated a need for an alternate juror. At that time the district attorney proposed that the parties stipulate to proceed with eleven jurors if it became necessary. Defense counsel agreed; the record does not show that defense counsel consulted with the defendant prior to announcing this decision.[6] Before opening arguments were made, one

---

[5] Ga. Dept. of Human Resources v. Sistrunk, 249 Ga. 543 (291 SE2d 524) (1982), relied on by defendant, is inapplicable. Sistrunk involved a situation where the conflict of interest amounted to a breach of the public's trust; in the case before us defendant argues that the alleged conflict impairs his individual interests. That argument raises the issue of ineffective assistance of counsel, but does not raise the issue of a violation of public trust.

[6] At the hearing on the motion for new trial defendant's trial counsel testified he could not remember whether he had consulted with the defendant before entering into the stipulation.

juror was excused and the trial proceeded with eleven jurors. Defendant now argues that under the due process clause of the Fourteenth Amendment trial counsel could not bind him to be tried by eleven jurors absent his participation in the decision to be tried by a jury of less than twelve. Whether, as a matter of federal constitutional law, an accused is required to personally waive his right to be tried by a jury of less than the statutory requirement is a disputed issue among the federal circuits.[7] We have found no controlling state authority and the parties have cited none to us.

We agree, however, with the Seventh Circuit that traditionally, the defense attorney has been considered spokesman for the defendant, and, therefore, able to speak on behalf of his client. See, United States v. People of State of Ill., 619 F2d 668, 671 (7th Cir. 1980). We have, in other instances, held that " 'in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be *subsequently acquiesced* in by him.' " *State v. Phillips,* 247 Ga. 246, 248 (275 SE2d 323) (1981).[8] While the record in this case does not affirmatively show that defense counsel's waiver of defendant's right to be tried by a jury of twelve was made in the defendant's presence or by the defendant's express authority, we find that the defendant subsequently acquiesced in the

---

[7] F.R.C.P. 23(b) provides "Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12." However, the circuits have split in their interpretation of whether the defendant must personally waive this right. The Ninth and Sixth Circuits require strict compliance with the rule and have held that unless the defendant personally gives his express consent to be tried by a jury of less than twelve, the waiver is not valid. United States v. Reyes, 603 F2d 69 (9th Cir. 1979); United States v. Taylor, 498 F2d 390 (6th Cir. 1974). In the Fifth Circuit the defendant's waiver will be valid if the record indicates that the defendant consulted with his attorney prior to the stipulation to proceed with less than twelve. See, e. g., United States v. Huff, 637 F2d 368 (5th Cir. 1981). The Seventh Circuit has held that the defendant makes a valid waiver where his attorney agrees to a jury of less than twelve in his presence and the defendant does not object; the Seventh Circuit has concluded that due process does not require more. United States v. People of State of Ill., 619 F2d 668 (7th Cir. 1980), cert. den. 101 SC 229. We also note that the ABA Standards relating to the control and direction of a criminal case provide that the accused is to make decisions concerning his (1) plea (2) whether to waive a jury trial and (3) whether to testify in his own behalf. The standards express no opinion on whether the defendant or his counsel is to control the decision to proceed with a jury of less than twelve. ABA Standards Relating to The Administration of Criminal Justice, "The Defense Function," § 5.2, p. 127.8 (1974). Cf. Patton v. United States, 281 U. S. 276, 312 (50 SC 253, 74 LE 854) (1930).

[8] *Phillips* dealt with the defendant's waiver of his right to be present in the courtroom during cross-examination of a key State's witness.

waiver by not objecting to the reduction in size of the jury at any point during trial. See People v. Murrell, 60 Ill. 2d 287 (326 NE2d 762). We conclude that, while it may be a better practice, it is not necessary for an accused to personally waive his right to a jury of twelve and agree to be tried by a jury of less than twelve. Counsel for the accused may validly waive this right for him if (1) the waiver is made, without objection, in the accused's presence or (2) the accused otherwise acquiesces in the waiver.

(b) Defendant also argues, and the State concedes, that the trial court erred in excusing the twelfth juror due to his relationship to the defendant.[9] However, no objection was made to the dismissal of the juror at trial. Errors not objected to at trial will not be entertained by this court on appeal. See, e. g., *Willis v. State,* 249 Ga. 261 (290 SE2d 87) (1982).

(4) In his ninth enumeration of error defendant contends that the trial court erred in permitting the District Attorney to make prejudicial statements to the jury in his closing argument. Defendant concedes that no objection was made at trial, but argues that the trial court has an independent duty, arising out of Code Ann. § 81-1009 "to interpose and prevent" statements of prejudicial matters even absent a timely objection by counsel. Notwithstanding the expansive language of this code section, "it has been held that, unless the court's attention is called to such improper argument and a ruling invoked upon the trial, it is too late to raise the point for the first time in a motion for new trial." *Morris v. State,* 200 Ga. 471, 480 (37 SE2d 345) (1946). We find no error.

(5) Defendant also maintains the trial court erred in "sending the jury to lunch with the sheriff" as the sheriff was the State's chief prosecuting witness. Defendant concedes, however, that no objection to the sheriff's alleged disqualification was made at trial. We note at the outset that the record does not conclusively support this interpretation of what transpired; it is not clear whether the trial court was instructing the sheriff or the bailiff to take charge of the jury at lunch time. While it is true that a sheriff who is a prosecutor in the case is disqualified to act as the jury bailiff, *Reaves v. State,* 242 Ga. 542 (250 SE2d 376) (1978), where no objection to the sheriff's disqualification to serve as bailiff is made at trial, the allegation that the sheriff should not have been permitted to perform this duty is not a sufficient ground for a new trial. *Morakes v. State,* 201 Ga. 425 (40

---

[9] On the day of trial the excused juror informed the court that he had just learned the defendant's sister had been married to the juror's uncle. The juror expressed his concern that this relationship might disqualify him from serving. See *Garrett v. State,* 203 Ga. 756 (48 SE2d 377) (1948); Code Ann. § 59-716.

SE2d 120) (1946).

(6) Defendant argues that the trial court erred in failing to conduct a Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) hearing prior to allowing the sheriff to testify to statements made by the defendant to him following the discovery of the victim's body. Defendant concedes that he did not object to the admission of his confession or request that a Jackson v. Denno hearing be conducted on the voluntariness of his statements. At trial the sheriff testified that on the morning of the defendant's arrest he received a call from a person whose name he could not remember, informing him where the victim's body could be found. The defendant's name was not mentioned by the caller. Upon arriving at the victim's house the sheriff observed the defendant standing nearby and inquired whether the defendant "knew anything about what went on up at Dessie Woods' [house. The defendant] hesitated a minute and then he told me, he said 'I might as well tell you the truth. I shot him.' " The defendant was then taken into custody and given Miranda warnings. Defendant again admitted shooting the victim to the sheriff. Defendant's narration of these events at trial did not vary from the sheriff's account.

Under the holding of Jackson v. Denno, supra, "[a] defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." 378 U. S. at 380. However, there is no constitutional requirement that the trial court conduct, *sua sponte,* a Jackson v. Denno hearing on voluntariness absent a contemporaneous challenge to the use of the confession in evidence. *Watson v. State,* 227 Ga. 698 (182 SE2d 446) (1971); Wainwright v. Sykes, 433 U. S. 72, 86 (97 SC 2497, 53 LE2d 594) (1977); United States v. Smith, 638 F2d 131 (9th Cir. 1981); United States v. Powe, 591 F2d 833 (DC Cir. 1978); Evans v. United States, 377 F2d 535 (5th Cir. 1967); United States v. Taylor, 374 F2d 753 (7th Cir. 1967). In this case the defendant admitted, both prior to and during trial, that he had killed the victim; at no time did he contest the voluntariness of his pre-trial confession or seek to prevent its admission in evidence. We find no error.

(7) Defendant maintains that the trial court's instructions on the issue of insanity were insufficient. However, our study of the record leads to the conclusion that the trial court charged the essence of defendant's requests to charge on this issue. Further, the trial court's charge on insanity, taken as a whole, was an appropriate statement of the law and consistent with the evidence presented at trial.

(8) Last, defendant argues that his trial counsel rendered

ineffective assistance in failing to request a charge conference;[10] in failing to object to the admission in evidence of his confession to the sheriff; in failing to object to the disqualification of the excused juror; and in failing to object to inflammatory remarks made by the District Attorney in closing argument.[11]

The standard regarding ineffective assistance of counsel is " ' "not errorless counsel and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance." ' " *Willis v. State,* 249 Ga. 261, 266 (290 SE2d 87) (1982); *Hawes v. State,* 240 Ga. 327, 329 (240 SE2d 833) (1977). In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. See *Hawes* at 329.

We are unable to conclude, from our study of the record, that defense counsel was inadequately prepared in this case. The defendant openly admitted shooting the victim but maintained he was insane at the time. Defense counsel presented a strong defense of insanity which the jury, apparently, elected not to accept. *Peek v. State,* 250 Ga. 50 (295 SE2d 834) (1982). Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client. *Reid v. State,* 235 Ga. 378, 379 (219 SE2d 740) (1975). In this regard this court will not substitute its judgment for that of trial counsel.

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs specially.*

DECIDED JANUARY 13, 1983.

*Larsen & Larsen, William Washington Larsen, Jr.,* for appellant.

*Beverly B. Hayes, District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

SMITH, Justice, concurring specially.

"Applied to the case before us, the Constitution prohibits a legislator from representing a client, for his own financial gain, in any

---

[10] We point out that the trial court charged the substance of all of defendant's requests to charge.

[11] At the hearing on the motion for new trial, trial counsel testified that he had taken great care in selecting individual members of the jury and he believed he knew each of them well. He maintained he had not objected to the State's closing argument because he thought the jury would accept the District Attorney's "rantings and ravings as part of his style" and "see through it."

civil transaction *or matter wherein the State of Georgia shall be an opposing party.*

"Nor are the proscriptions of the law confined to legislators who are lawyers. *They extend to every public officer." Ga. Dept. of Human Resources v. Sistrunk,* 249 Ga. 543, 547 (291 SE2d 524) (1982). (Emphasis supplied.)

I concur specially because although I agree with the result reached by the majority, I believe that today's opinion cannot be squared with the clear language of our recent decision in *Sistrunk.* At the time of Hudson's trial, his appointed counsel was serving simultaneously as the Probate Judge and Solicitor of the State Court of Treutlen County. I take it that no one would challenge the fact that he was twice over a "public officer." Nor can it seriously be contended that *Sistrunk* applies only in civil cases. A criminal trial is certainly a "matter wherein the State of Georgia shall be an opposing party" as stated in *Sistrunk.* Id.

The majority's attempt to distinguish *Sistrunk,* see n. 5 supra, is unpersuasive. Characterizing the defendant's claim as an "ineffective assistance" issue rather than a "public trust" issue begs the real question in this case. *Sistrunk* applies here inasmuch as the State of Georgia is "an opposing party." By placing his client's interests in potential conflict with his duties as a "public official," the attorney here has "violated the trust" of either the state or his client. In my view this case points out the principal weakness of our decision in *Sistrunk:* the "public trust" theory used there is so broad and amorphous as to be unworkable. A better approach would have been to decide *Sistrunk* on standard conflict of interest grounds, then proceed on a case-by-case basis. However, this court chose not to do so, and we are bound by the course set in *Sistrunk.*

In my view there are only two workable constructions of our holding in *Sistrunk.* The rule in *Sistrunk* either applies to "every public officer," as the decision plainly states, or it was aimed at the legislature only. Our holding there was based on Georgia Constitutional law. That holding cannot, consistent with the principle of stare decisis, be trimmed, hedged, or just plain ignored by this court in this case and future cases. I concur in today's judgment (see 249 Ga. 543, 552 (Smith, J., dissenting)), but I think we should either abide by the plain language of *Sistrunk,* overrule it, or admit that the decision was aimed solely at the legislative branch of government.