## 39533. PUGH v. THE STATE.

GREGORY, Justice.

The defendant was convicted of cruelty to children and the felony murder of two-year-old Dana Nichole Mobley. He was sentenced to life imprisonment.

The evidence at trial showed that the defendant had been living with the victim's mother, Debra Mobley, for over a year.[1] At the time of the victim's death the defendant was unemployed; he frequently supervised the victim while her mother worked as a waitress at a local restaurant.

At approximately 3:45 p.m. on the day of the victim's death, the defendant drove Debra Mobley to work. Mobley's sister observed the victim leave with the couple at this time and return with the defendant shortly after 4:00 p.m. She testified that the victim was "acting fine" and walked without difficulty during this period of time. Two other witnesses testified at trial that they visited the defendant at 7:00 p.m. that evening.[2] They observed the victim in

---

[1] The victim was Debra Mobley's daughter by a former marriage. The victim was unrelated to the defendant.

[2] These witnesses were the brothers of a former resident of the apartment Mobley and the defendant shared. They entered the victim's room to look for items their brother believed he had left behind.

bed, propped between two pillows. These witnesses testified that the child's eyes were open in a "blank stare," and that she would not respond when spoken to; the covers were pulled up about her neck and vomit had puddled around both sides of her face. Acting on a request made by one of the visitors, the defendant wiped the vomit from the victim's face. The defendant explained to them that the child was still recovering from an ear operation and that the Tylenol he had given her earlier in the day had probably made her sick.

At 10:00 p. m. the defendant picked Mobley up at work. He testified at trial that he carried the victim to and from the car during this trip as the child was too sick to walk. Once at home the child refused to eat and, according to Mobley's testimony, appeared "sleepy and weak." When Mobley prepared the victim for bed she noticed bruises on the child's lower back and abdomen. The defendant explained to Mobley that the victim had slipped and stumbled against a footstool following her bath. At approximately 11:30 p.m. Mobley dispatched the defendant on an errand which took 15-20 minutes. When Mobley again checked on the victim at 1:00 a.m., the child was "stiff and wouldn't move." Having no telephone Mobley drove to a nearby store to find help. Paramedics were unable to revive the child.

Medical testimony indicated that the victim's death was the result of internal bleeding caused by a "great force exerted against the abdominal wall, pushing it backwards against the spine." The medical examiner opined that the victim's injuries were "caused by the force of an individual jumping [or] stepping on the abdomen of the child while the child was lying flat on its back." The medical examiner testified that it would have taken between three and seven hours for the child to succumb to death following the injuries.[3] He also testified that within an hour after the injuries were inflicted the victim would not have been able to walk and, thereafter, would have lapsed into a semi-conscious state where she would have remained until death. Both the medical examiner and the Director of the State Crime Lab expressed the opinion that a stumble or fall could not have resulted in the extensive injuries sustained by the victim. The medical examiner also testified that, at the time of his examination, at least twenty contusions covered the victim's face, chest, abdomen and lower back.

In his own defense the defendant testified that the child had become sick after her mother left for work and had vomited twice. He

---

[3] The exact time of death was never established at trial.

testified that when he bathed the victim around 9:00 p.m., she slipped and fell against a footstool. He stated that he rarely disciplined the victim and insisted he had not harmed her on the day of her death.

Debra Mobley also testified in behalf of the defendant[4] that she had never observed the defendant abuse the victim. On cross-examination Mobley admitted that en route to the hospital on the night of the victim's death the defendant had stated to her that the child's death "would bring [them] closer together."

(1) The defendant first argues that the evidence against him is wholly circumstantial and is not sufficient to support the convictions. Viewing, as we must, the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty of the victim's murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "Where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." *Patillo v. State,* 250 Ga. 510 (299 SE2d 710) (1983); *Staymate v. State,* 237 Ga. 661 (229 SE2d 421) (1976). See OCGA § 24-4-6 (former Code Ann. § 38-109).

(2) Defense counsel maintains that he rendered ineffective assistance at trial by failing to seek independent medical testimony as to the cause of the victim's death. Defense counsel urges that since "both of the State's [medical experts] were accustomed to testifying for the State . . . they may have been persuaded during their examination of the evidence to slant their opinion toward a finding that a homicide had occurred."

The accepted standard regarding ineffective assistance of counsel is "not errorless counsel and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance." *Hudson v. State,* 250 Ga. 479, 486 (299 SE2d 531) (1983); *Willis v. State,* 249 Ga. 261, 266 (290 SE2d 87) (1982).

We are not of the opinion that defense counsel's failure to offer independent medical testimony as to the cause of the victim's death resulted in a denial of the defendant's constitutional right to effective assistance of counsel. We point out that defense counsel has not demonstrated to us that he now has available a medical expert who would testify to findings different from those offered by the State's

---

[4] Mobley is presently under indictment for the murder of her daughter.

medical experts. The mere possibility[5] that another medical expert might draw conclusions different from those drawn by the State's witnesses does not sufficiently support the suggestion that defense counsel was ineffective in failing to produce independent medical testimony. Further, we acknowledge that defense counsel vigorously cross-examined the State's medical experts. Both experts conceded on cross-examination that it was not possible to determine what had caused the victim's injuries, except that the injuries were the result of a great deal of force impacting on the victim's abdomen. Both experts also admitted that it was impossible to determine whether a man or a woman had inflicted the injuries on the child.

Further, there is nothing in the record to support defense counsel's proposition that the State's medical experts were in any way biased in favor of the State.

We find no merit in this enumeration of error.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 9, 1983.

*R. Joneal Lee,* for appellant.

*G. Theron Finlayson, District Attorney, Edward D. Lukemire, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.

---

[5] Defense counsel's argument concedes the possibility that any medical expert might have reached the same conclusions as those offered by the medical experts at trial.