### A02A2452. PETTY v. THE STATE.
(579 SE2d 23)

MIKELL, Judge.

In October 1996, Frank Petty was convicted of two counts of child molestation, two counts of cruelty to children, and one count of simple assault. The trial court sentenced him to thirty years confinement and ten years probation. Petty filed his first motion for a new trial on December 13, 1996. In May 1997, Petty's new appellate counsel filed an entry of appearance. He filed an amended motion for a new trial in May 1998, which was denied in an order filed on July 28, 1998. On May 18, 1999, Petty, acting pro se, filed a third motion for new trial. The court permitted appellate counsel to withdraw on October 15, 1999, after Petty discharged him. The court granted Petty's motion for an out-of-time appeal but denied his motion for appointment of new counsel. Petty filed a notice of appeal on November 17, 1999, and yet another motion for new trial, pro se, on January 7, 2000, which the court dismissed on March 1, 2000. On March 24, 2000, Petty filed a second notice of appeal. This Court dismissed his application for discretionary appeal and denied his subsequent motion for reconsideration. On November 20, 2001, after conducting a hearing on the status of Petty's counsel, the trial court appointed new appellate counsel and vacated the orders of July 23, 1998, and March 1, 2000, in order to permit a hearing on the merits of Petty's motion for a new trial with the benefit of counsel. The court denied the motion for a new trial on March 22, 2002, and Petty appeals. We affirm the conviction.

"On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict." (Citation omitted.) *Cupe v. State*, 253 Ga. App. 851 (560 SE2d 700) (2002). So viewed, the record shows that Petty lived with his girlfriend, Janice Whiten, and her two young children for approximately one year. During that time, Petty sexually abused Whiten's daughter, A. W., who was five or six years old at the time, by touching her vaginal area with his hand and exposing his penis to her. Additionally, on at least one occasion, Petty entered the children's bedroom and threatened A. W. and her seven-year-old brother, K. S., with a rolled newspaper that he had set on fire. According to the children, Petty told them that if they were not quiet, he would burn their hair. Because K. S. had been hospitalized

for burns in the past, he was particularly frightened when threatened with fire.

1. Petty contends that the trial court erred in allowing Dr. Jonathan Robinson, the psychologist who examined A. W., to testify on cross-examination as follows: "What I understand to be at point is whether she was sexually molested by the Defendant, and [A. W.] says that she was, and I believe her." Petty argues that Dr. Robinson should not have been permitted to testify regarding the ultimate issue of Petty's guilt of the child molestation charges. Significantly, defense counsel failed to object to the testimony.

As a preliminary matter, we agree that the psychologist's testimony that he believed that A. W. had been molested was improper. "Georgia courts have repeatedly held that a witness, including an expert witness, may not express his or her opinion as to whether a child has been molested." *Gosnell v. State*, 247 Ga. App. 508, 509 (2) (a) (544 SE2d 477) (2001), citing *Allison v. State*, 256 Ga. 851, 853 (5), (6) (353 SE2d 805) (1987); *Putnam v. State*, 231 Ga. App. 190, 191 (2) (498 SE2d 340) (1998) (physical precedent only); *Hilliard v. State*, 226 Ga. App. 478, 479-480 (1) (487 SE2d 81) (1997).[1] As Dr. Robinson's conclusion was a matter strictly within the province of the jury, the admission of the testimony was in error. *Gosnell*, supra.

However, we must determine whether its admission amounts to plain error in the absence of any objection by Petty's trial counsel. "As a general rule, a party cannot object to the admission of evidence after the evidence has been admitted without objection; failure to object at the time the evidence is offered amounts to a waiver of any objection which might have been raised." *Gosnell*, supra at 510 (2) (c). "[T]here is an exception to this general rule in cases of plain error. Plain error is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Citations and punctuation omitted.) *Buice v. State*, 239 Ga. App. 52, 56 (2) (520 SE2d 258) (1999). Accord *Gosnell*, supra at 510.

Because Dr. Robinson's comment on the ultimate issue was not the only evidence linking Petty to the crime, we cannot say that the admission of the improper testimony amounted to plain error. See *Gosnell*, supra at 510-511 (2) (c); *Buice*, supra. A. W. testified at trial that Petty touched "[her] private . . . between [her] legs . . . with his hand." Additionally, Phyllis Marsteller, an investigator with the

---

[1] We have held that "while it is permissible, for example, to introduce expert opinion testimony to the effect that the alleged victim in a child molestation case has exhibited behavioral characteristics consistent with those of a sexually abused child, it is not permissible to present expert opinion testimony to the effect that the child has in fact been abused." (Citations omitted.) *Remine v. State*, 203 Ga. App. 30, 31 (2) (416 SE2d 326) (1992).

Jackson County Department of Family and Children Services ("DFACS"), testified that A. W. reported that Petty "rubbed her private part with his hand and showed her his private part." Marsteller further testified that, using a drawing, A. W. identified the "vagina area" as her private part and that the child described Petty's penis as having "hair on it" and "point[ing] straight out." Vicki Underwood, an investigator with the sheriff's department, gave a similar account of Marsteller's interview with A. W. "Given this other evidence, we find it improbable that . . . the·complained-of error[ ] was ·the deciding factor for the jurors." *Gosnell*, supra at 511. Accordingly, reversal is not warranted on this ground.

2. Petty argues that the trial court erred in denying his motion for new trial because he was denied effective assistance of counsel. He raises a number of alleged deficiencies in his trial counsel's performance.

> To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies.

*Hardegree v. State*, 230 Ga. App. 111, 113 (4) (495 SE2d 347) (1998). "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous." (Citation and punctuation omitted.) *Williams v. State*, 234 Ga. App. 191, 193 (2) (506 SE2d 237) (1998). Bearing these principles in mind, we find no merit to Petty's claims.

(a) First, Petty argues that his trial counsel was ineffective due to an alleged conflict of interest. The record shows that Walter Harvey, Petty's trial counsel, had served as a part-time special assistant attorney general (SAAG) representing DFACS in certain cases prior to his representation of Petty at the criminal trial in October 1996. Additionally, another lawyer from Harvey's firm served as a SAAG at the time of Petty's trial. Petty contends that a conflict arose because a DFACS investigator testified against him and because the department became involved in the children's case after allegations of abuse were made against Whiten. However, there is no evidence that Harvey or his law partner participated in any DFACS cases involving A. W., K. S., Whiten, or Petty. In fact, Harvey testified at the hearing on Petty's motion for new trial that he "did very little" for DFACS during the short period of time that he was a SAAG; that he never felt that his limited work for DFACS created a conflict of interest with regard to his private clients; and that neither he, nor his partner, represented DFACS in any matter related to Petty's case.

Petty has failed to cite any case law or statute providing that an attorney's part-time service as a SAAG would result in an automatic conflict of interest with respect to private clients, and our research reveals none. In fact, our Supreme Court declined to adopt a similarly broad rule in *Hudson v. State*, 250 Ga. 479 (299 SE2d 531) (1983), where the appellant sought "automatic disqualification of every attorney in a criminal defense action where the attorney is simultaneously employed as either a state court solicitor or probate judge." (Footnote omitted.) Id. at 482 (1). The Court held that a defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance," and that "[a] mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence." (Citations and punctuation omitted.) Id. The Court explained that "[b]y 'actual conflict' we mean more than the bare possibility that a conflict might have developed." Id. As in *Hudson,* here we conclude that Petty has failed to show that an "actual conflict" existed between Harvey's role as defense counsel and his former role as a SAAG. Further, without more, the mere fact that Harvey's law partner served as a SAAG did not result in a conflict of interest with respect to Harvey's representation of Petty. *Thompson v. State*, 254 Ga. 393, 396-397 (2) (330 SE2d 348) (1985) ("an actual conflict of interest must be shown in order that a partner or associate of a part-time solicitor of a state court be disqualified from representation of a defendant in a criminal case before a superior court").

(b) Next, Petty alleges ineffective assistance of counsel based on his attorney's failure to object to Dr. Robinson's testimony that he believed A. W. had been molested. To succeed on this claim, Petty must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. "It is well established that the decision of whether to interpose certain objections is a matter of trial strategy and tactics." *Gosnell*, supra at 511 (3), citing *Herndon v. State*, 235 Ga. App. 258-259 (509 SE2d 142) (1998). "Counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel." (Citations and punctuation omitted.) *Cupe*, supra at 855 (3) (a).

Our decision in *Gosnell v. State*, supra, is directly on point. In *Gosnell*, trial counsel failed to object when two witnesses testified that they believed the defendant molested the victim and when a third witness improperly bolstered the victim's credibility. As in the case sub judice, in *Gosnell*, we held that the admission of the testimony complained of was error, but that it did not constitute plain error. Id. at 510-511 (2) (c). The defendant in that case alleged inef-

fective assistance of counsel based on his attorney's failure to object, and we held as follows:

> Pretermitting whether trial counsel's decision not to object to the challenged testimony constituted ineffective assistance of counsel, it does not require reversal because Gosnell has failed to establish that the testimony so prejudiced his defense as to affect the outcome of his trial.

(Citation omitted.) Id. at 511-512 (3). We reach the same result here. Based on the reasons discussed in Division 1, we conclude that Dr. Robinson's statement was not so significant as to have contributed to the jury's verdict, particularly in light of the substantial evidence of Petty's guilt. Accordingly, Petty has failed to demonstrate that but for counsel's failure to object, a reasonable probability exists that the result of the trial would have been different.

(c) Petty contends that counsel rendered ineffective assistance based on his failure to adequately challenge the harmful testimony of the victims. We reject this argument. The record shows that Harvey cross-examined both children. The decision of how to conduct cross-examination of a child witness is a matter of trial strategy, which is the exclusive province of the lawyer. *Cupe*, supra at 857 (3) (f).

3. Petty assigns error to the court's refusal to admit a certified copy of Whiten's conviction for child cruelty based on an incident in which she struck K. S. He sought to introduce evidence of the conviction to impeach the children's testimony that their mother had never hit them. The trial court ruled that the certified copy of the conviction was inadmissible because Whiten did not testify but that Petty could introduce evidence of the incident through witness testimony.

Pretermitting whether the court erred in refusing to admit the certified copy of the conviction, it would not warrant reversal because any error was harmless. A witness who was present when the incident took place testified that Whiten struck K. S. in the presence of A. W. and a police officer; that Whiten was arrested and taken to jail; and that DFACS temporarily removed the children from the home. See *Coppola v. State*, 161 Ga. App. 517 (1) (288 SE2d 744) (1982).

4. Finally, Petty argues that the trial court erred in denying his motion for a mistrial and in refusing to give a limiting instruction regarding evidence of violent acts other than those for which Petty was indicted. Because Petty has failed to demonstrate error by the record, we affirm.

Prior to the state's case, Petty moved in limine to exclude evidence of violent acts committed by him against the children and Whiten other than those alleged in the indictment. The prosecutor represented that he did not intend to present evidence of other

instances of violence and that he would attempt to limit the children's testimony. He cautioned that child witnesses are sometimes difficult to control. During A. W.'s testimony, she stated that Petty "abused my mama, slapped her." Petty's counsel objected, and the prosecutor reminded A. W. that she should only answer his questions. A. W. further testified that Petty "whoop[ed] K. S. with a switch real hard" and that he spanked both children; however, defense counsel did not object, move for a mistrial, or request a curative instruction from the court at that time. Accordingly, he failed to preserve the issue for appeal with regard to A. W.'s testimony. *Harris v. State*, 234 Ga. App. 126, 128 (2) (505 SE2d 49) (1998).

Petty further argues that the court should have granted a mistrial or given a curative instruction based on the improper testimony of the DFACS caseworker, the sheriff's investigator, and the psychologist. The record shows that both Marsteller and Underwood testified that A. W. told them that Petty beat her and her brother. Marsteller further testified that A. W. was afraid Petty would kill her or her mother. Petty moved for a mistrial during the testimony of both witnesses. Additionally, Dr. Robinson testified that A. W. indicated to him that Petty told her that if he went to jail, "he would break out like he had before and he would come and get both her and her family," prompting another motion for mistrial from defense counsel.

We find no error in the trial court's denial of Petty's motions for a mistrial. "The decision of whether to grant a mistrial is within the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion." (Citation and punctuation omitted.) *Floyd v. State*, 227 Ga. App. 873 (1) (490 SE2d 542) (1997). Petty has failed to cite any facts or law demonstrating that the court's denial of his motions amounted to an abuse of discretion.

Furthermore, Petty's argument that the trial court erred by not giving a curative instruction is without merit. In fact, the court offered to give curative instructions to the jury on multiple occasions during the trial, but Petty's counsel refused, because he feared that such an instruction would only emphasize the evidence of Petty's violent behavior. Additionally, when asked if he had any objections to the jury charge given at the close of the evidence, defense counsel did not raise the allegedly improper testimony or request an additional curative instruction. The charge conference is not included in the transcript, and Petty has presented no evidence that he requested a limiting instruction regarding the challenged testimony. See generally *Tahamtan v. Sawnee Elec. Membership Corp.*, 228 Ga. App. 485 (491 SE2d 918) (1997) (burden is on the party alleging error to show it affirmatively by the record). Accordingly, this enumerated error is without merit, and we affirm the judgment of the trial court.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

44

Decided February 6, 2003 —
Reconsideration denied February 28, 2003 — 

*Donna A. Seagraves*, for appellant.
*Timothy G. Madison, District Attorney, Mary L. Skene, Assistant District Attorney*, for appellee.