STATE ex rel. STARNES and WALTON, Appellants v. ERICKSON, Respondent

(186 N.W.2d 502)

(File No. 10832, 10833. Opinion filed April 26, 1971)

**Boyce, Murphy, McDowell & Greenfield, Gary J. Pashby,** Sioux Falls, for petitioners and appellants.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for respondent.

WOLLMAN, Judge.

These are consolidated appeals from judgments quashing writs of habeas corpus.

Petitioners Starnes and Walton were charged with first degree robbery and grand larceny following an armed robbery of a grocery store in Beresford, Union County, South Dakota, on September 27, 1968. Attorney John Murphy of Elk Point was appointed to represent petitioners in response to their request for a court-appointed attorney.

On October 4, 1968, the sheriff of Union County made an ex parte application to the Honorable Francis G. Dunn, one of the judges of the Second Judicial Circuit, for an order transferring petitioners from the Union County jail in Elk Point to the state penitentiary at Sioux Falls, South Dakota. The sheriff stated in his sworn application that petitioners had previously been convicted of felonies at various places in the United States, that they were believed to be dangerous prisoners who had friends that might attempt to assist them to escape from custody, and that the Union County jail was not a safe place for the detention of petitioners because of a lack of personnel and equipment needed for proper security.

Judge Dunn entered an order on October 4, 1968, directing that petitioners be transferred from the Union County jail to the state penitentiary at Sioux Falls for safekeeping and detention until the trial of the action in Union County.

On October 18, 1968, Mr. Murphy advised the court of his desire to withdraw as counsel for petitioners because the

transfer of petitioners to the state penitentiary in Sioux Falls prevented him from being able to prepare adequately for trial. Petitioners indicated that some tentative arrangements had been made on their behalf to secure the services of attorney Tony Weisensee of Canton, South Dakota.

Later that day it was established that petitioners had through the efforts of a Mrs. Vera Rydell retained Mr. Weisensee to represent them, whereupon the court granted Mr. Murphy's request that he be relieved of any further duty to represent petitioners.

Petitioners entered pleas of not guilty to the charge of robbery in the first degree. No arraignment was had on the charge of grand larceny which was later dismissed on motion of the state's attorney. Mr. Weisensee's motion to have petitioners returned to the Union County jail until the time of trial was denied.

On November 14, 1968, a hearing was held on petitioners' motion to suppress the introduction of any and all evidence on the ground that petitioners had been deprived of their constitutional right to defend themselves in person and by counsel by reason of the fact that they were being held in the state penitentiary. Petitioners stated that the rules and regulations of the state penitentiary prohibited them from speaking to anyone other than their attorney, their priest or minister, and members of their immediate families. In response to the court's inquiry as to which potential witnesses the petitioners were unable to speak to, Mr. Weisensee replied that he did not intend to advise his clients to divulge to the prosecution the names of those persons whom petitioners intended to call as witnesses. He argued that to require them to disclose the names of witnesses would deprive petitioners of their right against self-incrimination. The court concluded that petitioners were not being deprived of their right to defend themselves and denied the motion.

Later in the afternoon of November 14, 1968, petitioners again appeared before the court at which time they withdrew their pleas of not guilty to the charge of robbery in the first degree and entered pleas of guilty to said charge. Following a spirited, persuasive and thoughtful plea for leniency

made by Mr. Weisensee on behalf of petitioners, the court sentenced petitioners to imprisonment in the South Dakota State Penitentiary for a period of eight years. At all times in question, Mr. Weisensee was the state's attorney of Lincoln County, South Dakota.

On December 9, 1969, petitioners filed applications for writs of habeas corpus in the circuit court of the Second Judicial Circuit. A hearing was held at which testimony was taken from petitioners and from attorney John Murphy. Mr. Weisensee's testimony was submitted by way of answers to interrogatories.

The circuit court entered findings of fact and conclusions of law adverse to petitioners' contentions and entered judgments quashing the writs.

The appeals present the following questions: (1.) was there an actual conflict of interest between Mr. Weisensee's position as Lincoln County State's Attorney and his role as defense counsel for petitioners which had the effect of denying petitioners the effective assistance of counsel, (2) was the transfer of petitioners from the Union County jail to the South Dakota State Penitentiary prejudicial to petitioners and in violation of their substantial rights, (3) were petitioners' guilty pleas coerced?

It is conceded that apparently there is no statutory authority for transferring a prisoner to the state penitentiary for safekeeping. In State v. Orricer, 1963, 80 S.D. 126, 120 N.W.2d 528, a defendant was taken from the Clay County jail to the state penitentiary because the Clay County jail did not have facilities or personnel to adequately guard and care for him, there apparently being no suitable facilities available in adjoining counties. It was held that the fact that there was no statutory authority for the transfer to or detention in the penitentiary for safekeeping in itself did not violate any of defendant's constitutional rights or in any manner tend to prejudice him in any substantial right. Likewise, in the instant case there is no evidence in the record to indicate that petitioners were in any way deprived of any of their constitutional rights.

Petitioners allege that Mr. Weisensee apparently failed to conduct any investigation into the facts and circumstances of the alleged crime. Thus, argue petitioners, because they were unable to talk to potential witnesses themselves they were deprived of the opportunity to defend themselves in person and by counsel. Petitioners have not given any example, other than the one noted below, of what they think Mr. Weisensee should have done in the way of investigating the facts and circumstances. Mr. Weisensee stated in his answers to the interrogatories that he made an independent investigation. The transcript of the preliminary hearing indicates that Mr. Weisensee was quite well acquainted with the facts of the case. Petitioners testified at the habeas corpus hearing that Mr. Weisensee failed to talk to Mrs. Vera Rydell and Shirley Coons who allegedly had information relating to the case, yet the record unequivocally shows that it was Mrs. Rydell who first made contact with Mr. Weisensee regarding the case. It would appear only logical that if she or her friend Shirley Coons had any information beneficial to petitioners she would have disclosed it to Mr. Weisensee.

It was conceded at oral argument that petitioners did not question the sheriff's good faith in making the application for transfer of petitioners to the state penitentiary. It would appear from the record that the sheriff's allegations concerning petitioners' prior criminal activity was certainly accurate.[1]

All things considered, then, we are not inclined to disturb Judge Burns' finding that the transfer of the petitioners

---

1. Petitioner Walton received a two-year penitentiary sentence for second degree burglary in Oklahoma in 1952, a three-year penitentiary sentence for second degree burglary in Oklahoma in 1958, a sentence of five years to life for first degree robbery in California in 1961, a nine-months jail sentence for grand larceny in Minnehaha County, South Dakota, in 1965, and a five-year penitentiary sentence in Oklahoma for larceny of an automobile in 1965. Petitioner Starnes received a two-year penitentiary sentence for second degree burglary in Oklahoma in 1958, a sentence of five years to life for first degree robbery in California in 1965, and a nine-months jail sentence for car theft in Minnehaha County, South Dakota, in 1965.

from the Union County jail to the South Dakota State Penitentiary for safekeeping pending trial did not violate any of petitioners' constitutional rights or in any manner prejudice them with respect to a substantial right.

A more substantial question is presented by petitioners' allegation that their rights were prejudiced by reason of the fact that their attorney was serving as state's attorney of Lincoln County at the time he represented petitioners in this action. The trial court took judicial notice of the fact that Lincoln County adjoins Union County, South Dakota.

The thrust of petitioners' argument is that there was a conflict between Mr. Weisensee's duties as Lincoln County State's Attorney and his duties of representing petitioners in their criminal case. This conflict, it is argued, was of such a nature that it denied petitioners the effective assistance of counsel guaranteed to them by the United States Constitution and the South Dakota Constitution. Petitioners rely mainly upon the case of Goodson v. Peyton, 1965, 4 Cir., 351 F.2d 905, in support of their argument that there was a conflict in Mr. Weisensee's dual role as prosecutor and defense attorney.

The Goodson case involved a situation where a defendant convicted after trial attacked his sentence upon the ground that his court-appointed attorney was the Commonwealth's attorney for a neighboring county. The Court of Appeals, after noting that the ethical considerations of the practice of dual representation were not a matter of concern for the federal court, outlined the possible conflicts of interest in the practice of dual representation in the following language:

"Loyal and effective representation of a person charged with crime in a state court may require defense counsel to question the constitutionality of state laws or to seek restrictive interpretations of them. He may find it necessary to attack the practices and conduct of law enforcement officials, including those of the prosecutor. In either of these events, if defense counsel is a Commonwealth's At-

torney, he may find himself required as defense counsel to attack laws, interpretations, practices and conduct which, as Commonwealth's Attorney, he is bound to defend and uphold in an adjoining county. He may be loathe to take a position as defense counsel which he would find embarrassing as Commonwealth's Attorney." Goodson v. Peyton, 4 Cir., 351 F.2d 905, 908.

The court stated that because there are decided possibilities of conflicts in interest inherent in the case where a Commonwealth's attorney undertakes the role of defense counsel in an adjoining county, especially where the court has selected the attorney as was the case in Goodson, the only practical remedy appeared to be a blanket prohibition of the practice. Indeed, Judge Haynsworth stated that it might well be that the only workable rule for the future would be a per se one, in which it would be presumed that one involuntarily represented by a public prosecutor in a criminal trial has not had the fair trial to which he is constitutionally entitled.

After reviewing the record completely, the court came to the conclusion that in the given case before it there was no conflict of interest and no actual prejudice to the defendant's rights:

"Conflicts of interest inhere in the situation, but in a given case, they may not be present at all. Here the charge of escape was simple and uncomplicated. It did not involve ramifications in other counties; nor did it present any occasion for far-ranging inquiry which might have produced, if fully answered, information indicative of other criminal conduct. An examination of the record of the trial discloses no possible issue involving the application of any state law. It does reveal a very competent performance by defense counsel. Neither Goodson nor his very imaginative and industrious lawyer in this court has suggested anything which might have been done for Goodson in the state trial court which was not done or anything that was done which should not have been done. In light of the

charge and its simplicity, we have no hesitancy in concluding that Goodson suffered no actual prejudice by reason of his representation by a lawyer who, at the time, was Commonwealth's Attorney of another county." 351 F.2d 905, 909.

Turning to the situation before us, we may observe initially that our law designates only state's attorneys in counties of over 50,000 population and with an area of over 2500 square miles as full-time state's attorneys who are prohibited from acting as counsel or attorney in any action, civil or criminal, in the courts of this state except when acting on behalf of their county or the state of South Dakota. SDCL 7-16-19. Obviously, this statute does not apply to the state's attorney of Lincoln County, South Dakota.

█ It is a matter of common knowledge that with the one exception noted, state's attorneys in South Dakota have traditionally engaged in the private practice of law, both civil and criminal. We note that the Attorney General of South Dakota has on at least two occasions indicated that there is no statutory bar to such a practice. 1921-22 A.G.R. 249, 1935-36 A.G.R. 378.

There are ethical considerations as well as questions of constitutional rights involved in a case where a state's attorney undertakes to act as a defense attorney in a state court in another county. Whatever our feelings might be with regard to the ethics of the practice of dual representation, it would not appear to be proper for this court to abolish the practice by a simple ipse dixit without first giving The State Bar of South Dakota and the state legislature an opportunity to reconsider the present statutory scheme whereby state's attorneys, with one exception, are deemed to be part-time employees who must look to the private practice of law to augment their incomes and to fulfill their professional careers. It should be made clear, however, that we do not in any way intend by these remarks to convey the impression that this court is giving its imprimatur to the practice of dual representation by state's attorneys in criminal matters.

The question which must be decided is whether in view of the record before us there was a conflict of interest which

denied petitioners their constitutional right to the effective assistance of counsel. This court has not hesitated to reverse a conviction where it appeared from the record that a conflict of interest existed in a case where the same attorney represented two defendants in separate trials. State v. Goode, 1969, 84 S.D. 369, 171 N.W.2d 733. The pertinent constitutional principles regarding the effective assistance of counsel were clearly outlined by Judge Hanson in the Goode decision and will not be repeated here. Relief has been granted in other cases where the record revealed an actual conflict of interest.[2]

■ In support of their contention that the conflicts of interest are obvious in this case, petitioners point out that the crime charged was pursuant to a state statute which was equally applicable in Lincoln County and that prosecutions pursuant to that statute were undoubtedly conducted during Mr. Weisensee's term of office, some of which "may very well" have been pending at the time of petitioners' case. Moreover, petitioners argue, Mr. Weisensee "may very well" have found himself in the anomalous position of upholding the statute in one case and contesting it in another. Also, the charges against petitioners involved law enforcement officers in both Minnehaha and Union Counties and that it seems "only reasonable to assume" that numerous prosecutions have been and are conducted in Lincoln County in-

---

2. See, e. g., Kelly v. Peyton, 1969, 4 Cir., 420 F.2d 912 (defense counsel retained by defendant's brother and sister had earlier signed defendant's arrest warrant in his capacity as justice of the peace); United States ex rel. Williamson v. LaVallee, 1968, 282 F.Supp. 968, D.C., N.Y. (defendant represented by retained counsel who also represented state's principal witness who was under indictment for burglary and larceny at time of defendant's trial and who was later permitted to plead guilty to unlawful entry); Zurita v. United States, 1969, 7 Cir., 410 F.2d 477 (defendant's privately retained attorney represented bank which defendant was charged with having robbed by use of a dangerous weapon); United States ex rel. Miller v. Myers, 1966, 253 F. Supp. 55, D.C., Pa. (defendant's retained attorney was also representing in an unrelated civil matter the owners of the restaurant which defendant was charged with having burglarized).

volving the same law enforcement officials. Thus, it is argued, Mr. Weisensee was confronted with the situation of challenging the actions of such officials in one case and urging their validity in another. Going further, petitioners say that "it was probably only by mere happenstance" that the law enforcement officials in Lincoln County did not become involved in these particular cases inasmuch as it was necessary for petitioners to go through Lincoln County both to and from the incident for which they were charged.

These arguments are not without merit and they serve to focus attention on some of the possible conflicts that might arise when a state's attorney undertakes the role of defense attorney in another county. Such contentions, if coupled with supporting evidence in the record, could very well compel the conclusion that a conflict of interest did exist in a given situation involving a state's attorney. However, because these arguments are made in an abstract fashion and are not supported by evidence in the record which would tend to establish that a conflict in fact did develop in the circumstances of the case, we conclude that there was no actual conflict in this case.

■ We are not prepared at this time to state as a general proposition that there is inherently an actual conflict of interest in all situations in which a state's attorney acts as defense attorney in a criminal case in a state court outside his own county. We believe that these cases must be decided on an ad hoc basis in the light of the entire record.

Our attention has been directed to the fact that in the Goodson case the attorney was appointed by the court, whereas in the instant case Mr. Weisensee was apparently retained by friends of the petitioners. Petitioners contend that they had no active part in retaining Mr. Weisensee. In our view of the case, whether Mr. Weisensee was retained personally by petitioners or was hired by petitioners' friends is not determinative of the basic question of conflict of interest. While certain cases have apparently held that a defendant may be deemed to have waived any conflict of interest by knowingly retaining an attorney in a situation which might give rise to a conflict, we do not believe that the concept of

waiver is necessary to our decision in this case. As a matter of policy, however, we agree with Judge Burns that because of the possibilities for a conflict of interest to arise it is doubtful that a court should appoint a lawyer who is state's attorney in another county of the state to represent an indigent defendant in a criminal proceeding. See Jones v. Baker, 1969, 10 Cir., 406 F.2d 739.

There is a very real need to assure defendants in particular and the public in general that justice is in fact being administered fairly and impartially in all criminal cases. The courts can take one small step toward this goal by foreclosing in as many cases as possible those situations which might result in conflicts of interest, either apparent or real, and resultant claims of ineffective assistance of counsel.[3]

■ Finally, petitioners contend that their guilty pleas were coerced because they were informed by Mr. Weisensee that unless they pleaded guilty they would be charged under the habitual criminal statute. SDCL 22-7. In their interrogatories, petitioners asked Mr. Weisensee to describe in detail what, if anything, was said by him with reference to the habitual criminal act. Mr. Weisensee answered that he told petitioners at the penitentiary that if an information were filed charging them with being habitual criminals it would be in the discretion of the sentencing judge to enhance the penalty up to a sentence of life imprisoment. He informed petitioners that they were amenable to the provisions of the habitual criminal act by virtue of their prior criminal records. He informed them that it seemed to be at least a remote possibility that the state's attorney might elect to file such an information. Mr. Weisensee further stated that on arraignment day it appeared obvious that the state's attorney had no intention of filing a habitual criminal information and so Mr. Weisensee did not discuss the matter

---

3. "Even if justice is in fact done but not seen to be done, the defendant, and to some extent the public as a whole, lose respect for the system itself and for law in general." Dann, The Fifth Amendment Privilege Against Self-Incrimination: Extorting Physical Evidence From A Suspect, 43 So.Cal.L.Rev. 597, 603 (1970).

at any length except to advise petitioners that his copy of the information contained no habitual criminal count and that the information was devoid of any mention or reference to the habitual criminal act.

Mr. Murphy testified that at the time he talked to petitioners in the Union County jail he advised them that they would be subject to the habitual criminal statute should they be found guilty of another felony. He testified that at no time did he advise petitioners that the state would file a habitual criminal information against them unless they pleaded guilty. He also testified that he was not told by the state's attorney of Union County that a habitual criminal information would be filed unless petitioners pleaded guilty. He stated that his discussion with petitioners concerning the habitual criminal statute was based upon his past experience in criminal cases. He testified that petitioners seemed to be familiar with the habitual criminal statute. One can readily understand why this should be so.

When petitioners indicated their desire to withdraw their pleas of not guilty, the court asked Mr. Weisensee whether he had made any promises or threats to get them to change their pleas. Mr. Weisensee answered :

> "No, Your Honor. I advised the defendants what the statutory penalty for this offense is, that being one to twenty years, and—* * * I've discussed with the defendants the fact that I've visited with the State's Attorney and the Court about a possible sentence on this matter, and that neither the State's Attorney—that the Court would not indicate to counsel what its decision would be, or in any way indicate what term of years would be imposed in the event of a guilty plea— * * * I then advised the defendants that the State's Attorney told me that he would recommend to the Court something in the neighborhood of six years. However, it did not appear realistic that that would be the sentence, and so the final upshot of the thing was that it was indefinite, and the defendants understand that, Judge."

The court then addressed the defendants as follows:

"Now, have any threats or promises been made to you to get you to change your plea at this time to the charges made against you?

DEFENDANT WALTON: No, sir.

DEFENDANT STARNES: No, sir.

THE COURT: Both of you indicate No. And no promise has been made to you as to what sentence you would receive if you would enter a change of plea, is this right?

DEFENDANT WALTON: That's right.

DEFENDANT STARNES. That's right.

THE COURT: In other words, if you enter a change of plea here today, that plea would be of your own free will and accord, is that correct, Mr. Starnes?

DEFENDANT STARNES: Yes, sir.

THE COURT: And Mr. Walton?

DEFENDANT WALTON: Yes, sir."

We agree with the trial court's finding that the record made at the arraignment, together with the testimony of Mr. Murphy and Mr. Weisensee, fully supports the conclusion that the petitioners entered their guilty pleas knowingly and voluntarily and without any coercion. See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

In summary, then, we believe that the trial court correctly found that the petitioners had not been deprived of any of their rights or prejudiced in any substantial way by being held at the South Dakota State Penitentiary pending trial, that they were not denied the effective assistance of counsel and that their guilty pleas were in fact voluntarily entered.

Affirmed.

All the Judges concur.