41977. THOMPSON v. THE STATE.
(330 SE2d 348)

GREGORY, Justice.

The appellant, Earl Thompson, was indicted by the Thomas County Grand Jury for a violation of OCGA § 16-13-30.1[1] in that he

---

[1] OCGA § 16-13-30.1 provides in relevant part, "(a) (1) It is unlawful for any person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance upon either:

(A) The express or implied representation that the substance is a narcotic or nonnarcotic controlled substance;

(B) The express or implied representation that the substance is of such nature or appearance that the recipient of said delivery will be able to distribute said substance as a controlled substance; or

(C) The express or implied representation that the substance has essentially the same

"did unlawfully sell . . . a non-controlled substance, to-wit: aspirin, with the express and implied representation that the substance was a narcotic controlled substance, to-wit: cocaine, said substance being a counterfeit of a controlled substance to-wit: cocaine." The appellant filed a motion to dismiss the indictment based upon the alleged unconstitutionality of the statute. Following a hearing, the motion to dismiss was denied. Appellant's court-appointed counsel also moved to withdraw as counsel of record based upon the fact that an associate in his law firm had become the Solicitor of State Court of Thomas County. This motion was also denied by the trial court. We granted appellant's application for interlocutory appeal to review these rulings.

1. The appellant contends OCGA § 16-13-30.1 (Ga. Laws 1982, p. 2370) is unconstitutional in that it violates his right of due process as guaranteed by the state and federal constitutions. Specifically, appellant argues the statute violates due process because it subjects him to a greater penalty for the sale of a non-controlled substance than for the sale of some controlled substances. All violations of this statute subject the violator to a penalty of one (1) to ten (10) years imprisonment or a fine not to exceed $25,000, or both. There are no distinctions in penalties made for the type of non-controlled substance sold, or the type of controlled substance it is represented to be. The penalty for the sale of Schedule III, IV and V controlled substances and marijuana is one (1) to ten (10) years imprisonment with no fine. OCGA § 16-13-30 (h) (j) (2).

In support of his contention that the disparity in penalties under the two statutes violates due process, appellant relies upon *People v. Wagner*, 89 Ill.2d 308 (433 NE2d 267) (1982), where a similar statute was held unconstitutional. Appellant urges this court to adopt the rationale applied in that case and hold our statute unconstitutional. In *Wagner*, supra, the majority opinion of the Illinois Supreme Court held that it was obvious, even without an express legislative finding, that delivery of a controlled substance is a greater threat to the public than delivery of a non-controlled substance. Therefore, to impose a more severe penalty for the latter offense than the former could not reasonably be designed to remedy the evil. The majority relied on the former opinion in *People v. Bradley*, 79 Ill.2d 410 (403 NE2d 1029) (1980). But, as the dissenters pointed out, in *Bradley*, supra, there was an express legislative determination that delivery of a controlled substance was a more serious offense than possession of that substance, hence the latter could not reasonably be punished more severely than the former.

pharmacological action or effect as a controlled substance."

Our Controlled Substances Act contains no express legislative intent that a person who sells a non-controlled substance represented to be a controlled substance has not committed a more serious offense or should not be punished more severely than one who sells certain controlled substances. The fact that the legislature recognized the differences between the harm associated with various types of controlled substances by providing different penalties for the various types does not govern the statute under consideration in this case. When the legislature enacted OCGA § 16-13-30.1 it was dealing with an entirely different problem from that associated with the sale of controlled substances. We do not know the magnitude of the problem or evil associated with the sale of a substance represented to be a controlled substance and we cannot hope to be as adequately informed as to the nature and extent of the problem as the legislature was. The legislature could have found that the sale of non-controlled substances represented to be controlled substances is a serious health hazard to those who use the substance or that a substantial breach of the peace brought about by the violence emanating from this species of fraud is a greater threat to the public. We are simply not in position to say whether the evil sought to be remedied by OCGA § 16-13-30.1 is not as great a threat to the public health, safety and welfare as is the delivery of certain controlled substances. This is a matter to be determined by the General Assembly. This court will not substitute its judgment for that of the General Assembly in regard to the penalty to be imposed for violations of the statute. *Hodges v. Community Loan &c. Corp.*, 234 Ga. 427, 431 (216 SE2d 274) (1975). The General Assembly has the means of informing itself, and it has seen fit to make this classification, which we do not find irrational. Therefore, the trial court properly denied appellant's motion to dismiss the indictment.

2. On November 26, 1984 the trial judge entered an order in which he found the defendant indigent and appointed Harry Jay Altman II to serve as his attorney. On February 5, 1985, after undertaking representation of the defendant but before trial, Altman filed a motion to withdraw as counsel in which he pointed out that an associate attorney in his law firm had become the Solicitor of the State Court of Thomas County, a part-time position paid by Thomas County. Altman relied on an informal opinion of the Office of General Counsel for the State Bar of Georgia dated December 11, 1984,[2] which concluded that representation of a defendant by a part-time state court solicitor in a criminal case in a Superior Court violates Standard 35 of Bar Rule 4-102.[3] The trial court held that Altman was not

---

[2] The substance of the informal opinion is now embodied in Formal Advisory Opinion No. 44.

[3] "A lawyer shall decline proffered employment if the exercise of his independent profes-

disqualified nor in violation of any disciplinary rule and denied the motion. This ruling is enumerated as error on appeal.

There are competing interests of significant proportions at work in this issue. The State Bar has filed an amicus curiae brief urging a per se rule of disqualification from the practice of criminal law in this state of all attorneys in a law firm, one member of which is a part-time solicitor of a state court. The State Bar is quite properly anxious to assure that all lawyers exercise their professional judgment solely for the benefit of their clients.[4] To this end a lawyer should not represent clients with conflicting interests.[5] The concern is that an attorney who represents both defendants and the state, though in separate cases of course, has divided loyalties. He is called on at times to attack statutes which he must later defend. He must cross-examine and impeach witnesses today on whom he must rely tomorrow. There is a danger of the appearance of favoritism by a fellow prosecutor to one who serves part-time in a similar role. The effectiveness of a prosecutor may be diluted by his efforts on behalf of defendants which may be misconstrued by law enforcement officials. Over against these concerns we perceive a need in rural sections of the state to hire attorneys to serve part-time as solicitors because public funds are inadequate and workloads insufficient to justify full-time solicitors. In order to secure competent counsel to serve as part-time solicitors it is desirable that they be permitted to supplement their incomes through the private practice of law. Many criminal cases which come before us involve indigents for whom trial judges have appointed counsel. In rural areas with few attorneys the disqualification of part-time solicitors and their firms may seriously hamper the trial judge in appointing competent counsel to represent the indigent, and may impose unduly on the time and resources of the non-disqualified attorneys in the community.

Until local and state governments devise means to avoid the necessity of part-time solicitors, we decline to impose a per se rule of disqualification. Instead, we hold that an actual conflict of interest must be shown in order that a partner or associate of a part-time

---

sional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Standard 37. A violation of this standard may be punished by disbarment." Standard 35, 241 Ga. 736 (1978).

[4] "Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuance of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant." E. C. 5-14, 241 Ga. 689 (1978).

"If a lawyer is required to decline employment or to withdraw from employment under D. R. 5-105, no partner or associate of his or his firm may accept or continue such employment." D. R. 5-105 (D), 241 Ga. 694 (1978).

[5] See footnote 3, supra.

solicitor of a state court be disqualified from representation of a defendant in a criminal case before a superior court. This must be done on an ad hoc basis. *Hudson v. State,* 250 Ga. 479 (1) (299 SE2d 531) (1983); *State ex rel. Starnes v. Erickson,* ___ S. D. ___ (186 NW2d 502) (1971).

In rendering its opinion of disqualification the State Bar relied on a substantial number of ethics opinions from other jurisdictions which tend to support the opinion.[6] We do not quarrel with the concerns expressed in any of these opinions. They are valid concerns. Our position is pragmatic. Until the need for part-time solicitors is eliminated through means beyond our control, we decline to adopt a per se rule but require a case-by-case approach in which an actual conflict of interest must be shown. The State Bar also relied on our recent opinion in *Ga. Dept. of Human Resources v. Sistrunk,* 249 Ga. 543 (291 SE2d 524) (1982). However, as was pointed out in the dissenting opinion of Chief Justice Jordan and made plain in the majority opinion, the application was limited to civil transactions. We decline to extend that principle to criminal cases involving the circumstances before the court in this case.

*Judgment affirmed. All the Justices concur, except Hill, C. J., who concurs specially and Weltner, J., who dissents.*

HILL, Chief Justice, concurring specially.

As for Division 2 of the majority opinion, I concur in the judgment only. I abhor the apparent balancing of ethics versus need, I foresee that the "actual conflict of interest" test will add to the all too numerous post-conviction issues. Hopefully, the court's adoption of the case-by-case approach will, after a number of such cases has been decided, result in a more precise rule. Therefore, I reluctantly concur in the judgment.

WELTNER, Justice, dissenting.

I dissent as to Division 2.

In *Hudson v. State,* 250 Ga. 479 (1) (299 SE2d 531) (1983), we dealt with a similar circumstance. Hudson contended that his trial

---

[6] ABA Formal Opinion Nos. 16 (6/11/29), 30 (3/2/61), 186 (7/24/38), 118 (12/14/34), 142 (5/9/35), and 262 (12/16/44), and ABA Informal Opinion No. 1235 (August 24, 1972); Illinois Formal Opinion No. 791 (6/28/82); Kansas Formal Opinion Nos. 80-42 (1/2/81), 80-48 (1/31/81), and 83-37 (12/9/83); Texas Formal Opinion No. 419 (12/84); West Virginia Formal Opinion No. 83-4 (6/3/83); Kentucky Formal Opinions E-211 (1980), E-248 (1981), and E-291 (9/84); Nebraska Formal Opinion No. 81-8 (1981); Tennessee Formal Opinion Nos. 83-F-41 (4/14/83), 83-F-57 (10/24/83); Michigan Informal Opinion CI-887 (3/18/83); Montana Formal Opinion No. 12 (12/80); North Dakota Informal Opinion Nos. 37 (11/1/80) and 38 (12/12/80); Mississippi Formal Opinion Nos. 30 (6/26/75) and 54 (10/20/79); Maryland Formal Opinion No. 81/45 (3/26/81); South Carolina Formal Opinion Nos. 82-8 (9/82), 83-29 (undated), and 84-19 (undated); and New Hampshire Formal Advisory Opinion No. 12 (11/10/82).

398

counsel was subject to a conflict of interest in that he was, at the same time, solicitor of the state court and probate judge of the county.

We dealt with that contention in the following manner: *"Ga. Dept. of Human Resources v. Sistrunk,* 249 Ga. 543 (291 SE2d 524) (1982), relied on by defendant, is inapplicable. *Sistrunk* involved a situation where the conflict of interest amounted to a breach of the *public's* trust; in the case before us defendant argues that the alleged conflict impairs his individual interests. That argument raises the issue of ineffective assistance of counsel, but does not raise the issue of a violation of public trust." 250 Ga. at 482, fn. 5.

In this case, by contrast, the question of public trust is squarely before us, and the valid concerns recognized by the majority should not yield to a perceived pragmatism.

Stripped of labels, the situation here is that the State of Georgia *retains one member of a professional association to represent it in one* of the courts created by the State of Georgia, while another member of the same professional association continues to represent parties *against* the State of Georgia in other courts created by the State of Georgia.

We need not consider whether *Sistrunk,* supra, applies here, as the issue properly should be resolved on the age-old proposition that a law firm is not permitted to represent both adversary parties in contested proceedings — whether in the same or different courts. Nor is it permissible for a law firm to represent one party in one matter and, at the same time, represent an adverse party in a different matter. See *Gaulden v. State,* 11 Ga. 47 (1852); *Conley v. Arnold,* 93 Ga. 823 (20 SE 762) (1894). "It cannot be denied that the state and those it prosecutes for crimes are adversaries. The public policy which will not permit counsel to change roles from representing a person accused of crime to representing the state in prosecuting the person will not permit him to change from representing one conspirator in crimes to prosecuting his alleged co-conspirator in those same crimes." *Lane v. State,* 238 Ga. 407, 410 (233 SE2d 375) (1977).

DECIDED MAY 30, 1985.

*Altman & McGraw, Harry J. Altman II,* for appellant.
*H. Lamar Cole, District Attorney, James E. Hardy, Assistant District Attorney, Eddie Snelling, Jr., Senior Attorney,* for appellee.