42853. O'MELIA v. THE STATE.
(339 SE2d 586)

WELTNER, Justice.

O'Melia was convicted in the Superior Court of Glynn County of the offense of aggravated battery, and was sentenced to a term of imprisonment of 20 years.

His appeal consists of a single enumeration of error: "The Court erred in failing to grant O'Melia a new trial based on his counsel's conflict of interest."

The jurisdiction of this court is based upon the constitutional contention of ineffective assistance of counsel.

1. The record of the case discloses that O'Melia's counsel at the time of the trial was Solicitor of the State Court of Glynn County, having responsibility for the prosecution on behalf of the state of misdemeanor offenses. Following O'Melia's conviction, new counsel was retained, who filed an amended motion for new trial setting out: "Defendant's counsel had an irreconcilable conflict of interest because said counsel is also prosecuting attorney for the State of Georgia all in violation of the Sixth Amendment to the U S Constitution." A hearing was held on the amended motion, at which time O'Melia's former counsel testified that he became Solicitor of the State Court of Glynn County on January 1, 1985, and that his duties included the prosecution of criminal cases, "representing the State of Georgia as a party," and that O'Melia retained him as his counsel "in a criminal case in which the State of Georgia was the adverse party" in the year 1984, prior to his election.

The trial took place on April 2, 1985. The witness testified that he was scheduled as solicitor to prosecute a number of cases on April 2, 1985, in the State Court of Glynn County, but that, as a result of the trial of O'Melia, a solicitor *pro hac vice* was appointed.

This colloquy then took place:

"Q. Okay, sir. So on April the 2nd, 1985, you were actually scheduled, if I understand what you're saying, to do two different things. One was to represent the State of Georgia in criminal cases and the other was to represent Mr. O'Melia against the State of Georgia.

"A. That's correct."

Following this inquiry, O'Melia's former counsel was further examined:

"Q. Did you say, sir, that your duties as the solicitor of the State Court of Glynn County involved prosecuting misdemeanors that arise in Glynn County, Georgia?

"A. That's correct.

"Q. Okay, sir. When you investigated the state's case against Mr. O'Melia did you consider at all whether or not Mr. Eston Harden, Jr., may have committed a misdemeanor violation?

"A. Not at that time. No.

"Q. Did you ever at anytime?

"A. Well, after the trial was over with I got mad with myself and mad just because of the case, itself. It crossed my mind.

"Q. Okay.

"A. I'll have to tell you that.

"Q. You could have been in a position of prosecuting Mr. Eston Harden, Jr., the —

"A. That's true.

"Q. — victim in this case for violation of a misdemeanor —
"A. That's correct."

As a further witness, O'Melia called the clerk of the state court, who established that on April 2, 1985 (the day of O'Melia's trial) another named attorney was appointed solicitor *pro hac vice* for the State Court of Glynn County, and served then in that capacity.

The hearing developed an evidentiary conflict between O'Melia and his former attorney, in that O'Melia testified that he had inquired as to whether or not election to the office of prosecutor would have any effect upon his case, to which his lawyer replied "Ah, there's nothing to that at all." His former lawyer denied any such conversation.

2. Thus we are faced, again, with a situation similar to that which arose in *Thompson v. State*, 254 Ga. 393 (330 SE2d 348) (1985). In that case, a new trial was sought for an indigent defendant because his appointed attorney was associated in the private practice of law with a lawyer who was solicitor for the State Court of Thomas County. A majority of the court held that "an actual conflict of interest must be shown in order that a partner or associate of a part-time solicitor of a state court be disqualified from representation of a defendant in a criminal case before a superior court. This must be done on an ad hoc basis." 254 Ga. at 396, 397.

*Thompson* is distinguishable — factually, at least — from this case, in that it dealt with qualifications as to an associate, whereas here O'Melia's counsel was himself the solicitor of the state court. Attention is invited, also, to the recent holding in *Hudson v. State*, 250 Ga. 479 (299 SE2d 531) (1983), in which a criminal defendant was represented by appointed counsel who was the solicitor of the state court and probate judge. That attack was turned aside, however, because we held that "the objection to counsel must be made without delay, at the first opportunity after the accused learns of the grounds for disqualification. In this case the objection was not made until this out-of-time appeal"; 250 Ga. at 481. Further, the court refused to adopt an "automatic disqualification" standard, and went on to hold that the "[d]efendant has failed to show that an 'actual conflict' existed between his attorney's role as defense counsel and his role as state solicitor or probate judge. By 'actual conflict' we mean more than the bare possibility that a conflict might have developed. The record does not indicate either that counsel's position as a state court solicitor or his position as a probate judge actually affected his defense of his client. We find no error." Id. 482. Reviewing these authorities, it is quite plain that *Hudson* also is distinguishable from the present case: Hudson failed to show an "actual conflict."

3. Here, the record contains two clear conflicts.

The first is the matter of scheduling, in that it became necessary

for the solicitor of the State Court of Glynn County to obtain a substitute in order that the business of the State of Georgia might proceed, while that same public official, as defense lawyer, opposed the State of Georgia in another court. The second "actual conflict" as shown by this record is the commendably candid acknowledgment by the solicitor that, as defense counsel, he considered bringing misdemeanor charges against his client's victim![1]

The case, then, is of one who lays aside his official sworn duties owed to the people of Georgia in order to take up a case as counsel in opposition to the people of Georgia in another court. Further, here is a case of the contemplation (contemplation *only*) of employing the procedural machinery of the state court against a party who was adverse to the solicitor's private client.[2]

In these circumstances, we need not consider whether the "no per se rule" of *Hudson*, supra, and of *Thompson*, supra, is to be retained, as the record establishes the requirement of both cases that an "actual conflict of interest" must be shown. *Thompson v. State*, 254 Ga. at 396, 397.

4. The existence of "actual conflicts" having been established, the question is whether they entitle O'Melia to a new trial. The answer is in the negative.

O'Melia has shown no prejudice, of any kind, to himself by virtue of the dual representation of his trial lawyer. In the language of *Hudson*, supra, he has failed to show that the dual representation "actually affected his defense of his client." 250 Ga. at 482. To the contrary, the record is clear that the defense of O'Melia affected only the solicitor's discharge of his *public* duties, to the extent that: (1) the business of the State Court of Glynn County was laid aside for a day, and a substitute obtained to prosecute cases on behalf of the State of Georgia, and (2) for a moment, the solicitor contemplated employing the prosecutorial power of his office against the victim of his client.

Hence, if anything, O'Melia succeeded in obtaining some of the "numerous benefits to be gained from being represented by counsel holding . . . esteemed public offices." 250 Ga. at 481. See also *Jones v. Ivory*, 255 Ga. 20 (334 SE2d 666) (1985).

There is no showing of prejudice to O'Melia. His claim of dis-

---

[1] The facts in the case are that O'Melia refused to pay for certain sodding done to his lawn; his creditor appeared at his house and indicated that he might remove the sod, and actually stooped to pick up some portion of it; O'Melia called for his gun, and shot him on the spot. The victim lost the use of his kidney, hence the aggravated battery for which O'Melia was convicted.

[2] Note that at all times the solicitor was laboring under an oath, prescribed by Ga. L. 1943, pp. 702, 708, as follows: "I solemnly swear that I will execute, do and perform the duties of office as solicitor of [the State Court of Glynn County] to the best of my skill and ability, and without fear, favor, or prejudice, for or against anyone, so help me God."

qualification having arisen only after his verdict of conviction, the trial court did not err in denying the motion for new trial.[3]

*Judgment affirmed. All the Justices concur, except Gregory, J., who concurs in the judgment only.*

DECIDED FEBRUARY 18, 1986 —
RECONSIDERATION DENIED MARCH 4, 1986.

*Randall M. Clark,* for appellant.
*Glenn Thomas, Jr., District Attorney, E. Jerrell Ramsey, John B. Johnson III, Assistant District Attorneys,* for appellee.

---

[3] Attention is invited to the addendum to Advisory Opinion No. 44 of the State Bar of Georgia, dated July 26, 1985, which discusses ethical considerations which yet remain following our opinion in *Thompson v. State,* supra. We note that the absence of a cause for the reversal of a criminal conviction cannot, of course, be the equivalent of the absence of ethical implications in dual representation.

Note, however, that subsequent to the addendum, this court amended Standard 38 of Rule 4-102 (Part IV, Chapter 1), Rules and Regulations for the Organization and Government of the State Bar of Georgia, to provide: "This rule does not extend to the partners and associates of part time solicitors or judges of a state court when they represent criminal defendants in courts other than the one in which such part time solicitor or judge serves unless an actual conflict of interest is shown."